**John W. DRAKE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1282S464.**

Supreme Court of Indiana.

Aug. 31, 1984.

John Richard Walsh, II, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of First Degree Murder.

The facts are these. Ruth Heaton, an elderly woman living alone, was killed in her home in Anderson, Indiana. Her assailant struck her about the head with a candlestick and then strangled her by placing a rope around her neck and attaching the rope to a door. The autopsy revealed strangulation to be the cause of death.

The police initially suspected M.C., an acquaintance of appellant, to be the assailant. He had befriended the victim and had been seeking large sums of money from her as well. The police did arrest M.C. for the murder but later dropped the charge.

About two years later the police received a tip from a member of appellant's family that appellant had confessed to them that he had killed a woman in Anderson, Indiana. After investigation, appellant was charged with the instant crime.

Appellant claims the trial court erred when it permitted a previously hypnotized person to testify. The witness was Nancie Ward, appellant's former wife. She was one of those persons present when appellant made his statement. The Anderson police first took her statement over the telephone from her home in New Jersey. The police tape-recorded the telephone call and reduced the conversation to writing. The police then went to New Jersey with the typed statement. Ward reviewed the statement and signed it. She then allowed herself to be hypnotized by one of the Anderson police. This session was also taped and a transcript was prepared from it.

When Ward was called to the stand to testify, appellant objected to her testimony in its entirety based upon her prior hypnotic experience. The trial court ruled:

"[T]he Court finds that the conduct of the hypnosis does not follow the guidelines in that it was not conducted by an experienced psychologist or psychiatrist experienced in hypnosis and that the hypnosis session was not conducted by an independent party, but somebody that was in fact an agent of the Anderson Police Department. And, therefore, the Court will deny the introduction of any [of] the products of the hypnosis, but will allow testimony of the witness that can be shown to the Court to be independently based outside of any product of the hypnosis." (Tr. 1671, at 6–19.)

Appellant asserts this was error and this Court should establish a *per se* rule that bans all testimony given by a witness who has been hypnotized. We rejected that position in *Pearson v. State,* (1982) Ind., 441 N.E.2d 468 (Prentice, J., concurring in result with opinion). We indicated in *Pearson* the fact that a witness had been hypnotized was a matter of weight to be considered by the trier of fact and not grounds for a *per se* disqualification.

This Court has barred the testimony of a witness when that testimony was the product of a hypnotic session. We have not barred other testimony from that same witness when it can be shown by clear and convincing evidence that the testimony is the product of a factual basis independent of the hypnosis. *See Peterson v. State,* (1983) Ind., 448 N.E.2d 673; *Pearson, supra; Strong v. State,* (1982) Ind., 435 N.E.2d 969.

In the case at bar, the direct testimony of Ward was limited to her recollections as evidenced by her statement made prior to the hypnosis. Although she was permitted to review the transcript of the hypnotic session prior to her in-court testimony, the trial court carefully limited the direct testimony to the statement taken over the telephone. We find an ample independent basis for the in-court testimony. The trial court did not err.

During the course of Ward's cross-examination, appellant brought out, for the first time before the jury, the fact that Ward had been hypnotized. Ward was extensively questioned about the incident and the court permitted appellant to introduce the transcript of the session into evidence. Later, in appellant's case in chief, appellant sought to place on the stand an expert witness, Dr. Levitt, to criticize the use of hypnosis at trial.

Appellant maintains it was error for the court to exclude Dr. Levitt's testimony as the jury needed the expert testimony to properly evaluate the hypnotic session and its product. In both *Peterson* and *Pearson,* the trial court permitted the testimony of the defendant's expert witness regarding the effect of hypnosis on testimony. However, in each of those cases, the State submitted the hypnosis-related testimony in their case in chief. In the case at bar, it was the appellant who injected the question of hypnosis.

The trial court was correct in his ruling. Essentially appellant was creating a straw man in the cross-examination and attempting to attack it during his case in chief. As the court did not permit the issue to be raised on direct examination we believe the court was correct in refusing to permit the testimony of Dr. Levitt.

Appellant contends the trial court erred in denying his Motion for Mistrial following the alleged violation of a witness separation order. One of the first of the State's witnesses was Amy Drake, appellant's sister-in-law. On the same day Drake testified, the court also heard a portion of Ward's testimony. Before Ward was finished, the court recessed for the day. The court admonished both Drake and Ward not to discuss their testimony with others. When the court assembled the next day, appellant sought to strike the testimony of both Drake and Ward, and to prevent the testimony of Charles Drake. Charles is the husband of Amy and the appellant's brother.

Appellant placed before the court the testimony of two persons who claimed that the Drakes and Ward had discussed their testimony during the prior evening, and

that Amy Drake and Ward were attempting to influence Charles to testify in a particular way against his brother. Ward denied this had occurred, but did acknowledge they were all housed in the same motel complex in close proximity to one another. After hearing this evidence, the trial court ruled against appellant on both the Motion to Strike and the subsequent Motion for Mistrial.

■ The decision whether to allow or to exclude the testimony of a witness once it is discovered that a violation of the witness separation order has occurred is within the trial court's discretion in the absence of connivance or collusion on the part of the party calling the witness. *Hudgins v. State*, (1983) Ind., 451 N.E.2d 1087; *Grimes v. State*, (1983) Ind., 450 N.E.2d 512. Appellant argues that there was connivance as the State was responsible for the lodging of the witnesses in a manner which made it not only possible for the witnesses to confer, but, in fact, encouraged the witnesses to confer. In the alternative, he argues an abuse of discretion.

■ The trial court was in the best position to evaluate the testimony of the parties. There is sufficient evidence to support the trial court's ruling.

Appellant alleges a violation of Ind.Code § 35–1–37–4 (since repealed) (for current version see Ind.Code § 35–37–2–6). The statute states in pertinent part:

"After hearing the charge, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer, who must be sworn by the clerk to keep them together in some private and convenient place, and furnish them food as directed by the court, and not permit any person to speak or communicate with them ...."

Appellant's counsel filed an affidavit in conjunction with his Motion to Correct Error. This was nearly six months after the trial. The affidavit asserted that the court baliff had indicated to him that the jury had been allowed to travel from the courthouse to the motel in their own private cars. This he contends was a violation of the requirement that the jury once charged must remain together.

The record provided does not indicate when or why the jury was released. Nor does it indicate why this mode of transportation was chosen.

■ Barring exigent circumstances, a jury should not be permitted to separate once deliberation has begun. *Bales v. State*, (1981) Ind., 418 N.E.2d 215; *Walker v. State*, (1980) Ind., 410 N.E.2d 1190. Both *Bales* and *Walker* dealt with the releasing of the jury for several days after deliberations had begun. Here the jury was released for a few minutes while the jurors drove a short distance. Nor is this a case where the jurors were sent to their private homes during the course of deliberations. *See Follrad v. State*, (1981) Ind., 428 N.E.2d 1201; *McGaughey v. State*, (1981) Ind.App., 419 N.E.2d 184.

■ The affidavit does not point to any instance in which a juror was, in fact, exposed to a prejudicial influence, nor does it allege that any irregularity of any nature occurred. We therefore hold appellant has not raised the question of improper influence on the jury in a manner sufficient for appellate review.

Appellant's last issues revolve around a single set of events. The jury was impaneled on May 10 and 11. The jury was then excused until May 17, the date the trial was to begin. However, on May 17 the State sought a continuance premised upon the continued absence of two material witnesses. The State by affidavit complied with the requirements for seeking a continuance and the trial court granted the motion and set the trial for May 24. The State then sought the court's permission to conduct a video tape deposition of the pathologist who conducted the autopsy on the victim. The State's reasoning was that the doctor would be in West Germany on active duty with the Army when the matter was set for trial on May 24. The court permitted the taking of the deposition. Appellant objected at trial to both the continuance and the

taking of the deposition. He raises the following questions concerning these events. First, was the appellant denied a fair trial when the jury, after its selection, was returned to the community for two weeks of exposure to the media and the opinions of family and friends? Second, did the dismissal of the jury for that time equate with the discharge of one panel of jurors and the impaneling of a new set of jurors so that appellant's double jeopardy rights were violated? Thirdly, did the State's request for the taking of the deposition comply with the provisions of Ind.R. Tr.P. 32(A)(3) which controls the use of depositions in lieu of in-court testimony? Lastly, were the actions of the trial court violative of Ind.Code § 35–1–31–8 (recodified as Ind.Code § 35–37–4–3) [West Supp. 1984] in that appellant had not sought leave of the court to take depositions nor had he provided a notice to the State of an intention to do so?

The granting of a continuance due to the absence of a witness not listed on the original information is governed by Ind.R.Tr.P. 53.5. The granting of the continuance is within the sound discretion of the trial court and will be disturbed only by a clear showing of an abuse of that discretion. *Collins v. State*, (1982) Ind., 431 N.E.2d 802. We cannot find an abuse of discretion.

We do not find an issue of double jeopardy present in this case. Jeopardy attached when the jury was sworn and it was that same jury which rendered the verdict. Appellant cites to *Corley v. State*, (1983) Ind., 455 N.E.2d 945 (Givan, C.J., dissenting). In *Corley* the prosecutor sought a continuance after the commencement of the trial. The trial court noted its congested calendar and indicated that if the State, in fact, wished the continuance then this panel of jurors would need to be discharged and a new panel selected at that future date. We held in that situation that jeopardy attached at the swearing in of the first panel and it would be a double jeopardy violation for a second panel to hear the case. In this case, the jury was not discharged but merely allowed to recess for a period of time. We find no violation of appellant's rights.

Likewise, we find no error in the court's permitting of the taking of the doctor's deposition. In court use of depositions is controlled by Ind.R.Tr.P. 32(A)(3) which states:

"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(a) that the witness is dead; or

(b) that the witness is outside the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or

(d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used; or

(f) upon agreement of the parties."

Appellant maintains none of the above provisions apply as the doctor was present at the time trial was due to begin on May 17. He suggests the trial court was required to have the State present the testimony of the doctor even though the testimony would be out of order and not within its proper context. We do not agree. The trial court has a broad discretion in the control of proceedings. *Ingram v. State*, (1981) Ind., 426 N.E.2d 18. We find no error in the court's granting of the right to take the deposition and use it in lieu of in-court testimony.

Appellant's last argument concerns Ind. Code § 35–1–31–8 (repealed and replaced by Ind.Code § 35–37–4–3) [West Supp.1984] which stated:

"Sec. 8. A defendant, by leave of court or by written notice to the prosecuting attorney, may take the depositions of witnesses residing within or without the state, to be read on the trial; and the request of the defendant for such leave of court, or the giving by him of such notice to the prosecuting attorney, shall be deemed a waiver of his constitutional right to object to the taking of depositions of witnesses by the state, relative to the same matter, to be read on the trial: Provided, That leave to take such depositions be given the state, or notice of the taking of such depositions be given to the defendant by the prosecuting attorney."

Appellant maintains he did not, in fact, depose any witness, seek leave of the court to depose a witness, nor did he notify the State of an intention to depose a witness. We first note this is not entirely correct as appellant did, in fact, seek permission to depose this very witness, and then withdrew the request when the State indicated a desire to depose the doctor. Secondly, this Court in *Murphy v. State*, (1976) 265 Ind. 116, 352 N.E.2d 479 stated the trial rules and appropriate case law would govern the taking of depositions in criminal cases. This is the position now adopted in the statute. We conclude that the trial court properly followed the trial rules concerning the taking of depositions. We find no error in this issue.

The trial court is in all things affirmed.

All Justices concur.