John Wayne DRAKE, Appellant,

v.

STATE of Indiana, Appellee.

No. 48S00–8904–PC–296.

Supreme Court of Indiana.

Dec. 13, 1990.

**1288**

Susan K. Carpenter, Public Defender, Hope Fey, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jane Morrison, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

This is an appeal from the denial of post-conviction relief. A jury trial in 1982 resulted in appellant's conviction of First Degree Murder for the killing of Ruth Heaton, for which he was sentenced to life imprisonment. This Court affirmed the conviction and sentence on direct appeal. *Drake v. State* (1984), Ind., 467 N.E.2d 686. Subsequently appellant filed a petition for post-conviction relief which was denied.

The facts are: On the morning of April 8, 1977, Ruth Heaton, a nearly-blind widow and retired teacher, was found dead in her Anderson home by a friend. The victim had been struck five blows to the head with a candelabra and strangled by means of a rope tied around her neck and then suspended from an interior doorknob. Suspicion initially centered upon Michael J. Cox, who had served as the victim's handyman. On the day of her death, he had taken her to lunch and then deposited a check drawn on her account for $11,000 into his own account. Cox was convicted in 1978 of forgery but sufficient evidence was not forthcoming at that time to file murder charges.

Appellant's brother and sister-in-law, Charles and Amy Drake, were close friends with Cox and initially also were suspected of the murder. After Charles was questioned in this regard following Cox's arrest in 1977, Charles and Amy persuaded appellant to drive them to Florida picking up appellant's then-wife Nancie along the way. The evening they arrived in Miami, they had a party at which they drank heavily, smoked marijuana, and took Quaaludes. Appellant and Nancie were divorced in 1979, and Charles and Amy began moving from state to state.

In 1980, Amy telephoned the Anderson police from her home in Ohio and told them that at the 1977 party in Miami, appellant had confessed to killing Mrs. Heaton. Police subsequently contacted Nancie in New Jersey and obtained a similar statement over the telephone. She later was hypnotized and another, purportedly verbatim statement of appellant's admissions was taken. This renewed investigation led to appellant's instant conviction as well as Cox's conviction and life sentence in 1983 upon the theory that appellant had carried out the murder in concert with Cox. We affirmed upon direct appeal, *Cox v. State* (1986), Ind., 493 N.E.2d 151.

Appellant contends the post-conviction court erred in finding he had not been denied the effective assistance of trial counsel. In a post-conviction relief hearing concerning competency of counsel, the petitioner has the burden to prove that counsel's representation fell below a standard of reasonableness under prevailing professional norms. He also must prove that counsel's failure was so prejudicial as to deprive him of a fair trial. To prevail on appeal, he must show the evidence leads unerringly to a conclusion opposite that reached by the post-conviction court. *Smith v. State* (1989), Ind., 547 N.E.2d 817.

Appellant recites nine instances of allegedly substandard performance of his trial counsel which, he maintains, collectively undermine the reliability of his trial's result.

(1) Appellant argues trial counsel was ineffective in calling as a witness Wilbur Hardacre, a friend and neighbor of the victim, who testified he had seen appellant in the victim's neighborhood with Cox a

few days before the murder. Counsel called him on the spur of the moment when the State's case ended before his own witnesses were lined up and the court refused a continuance. Because the State had produced no eyewitnesses placing appellant near the murder scene, appellant argues counsel's failure to know that the witness would positively identify appellant as Cox's companion rendered his defense ineffective. Counsel testified at the post-conviction hearing that prior to trial, the witness had not been shown photographs but was unable to provide a good description of Cox's companion, and his strategy was to place Cox in the victim's neighborhood.

We agree with the post-conviction court that this was a matter of trial tactics, and while in retrospect Hardacre's testimony did not benefit the defense, it was not reasonably foreseeable that the witness's recollection would gel so dramatically upon seeing appellant in person. Moreover, in light of defense evidence that appellant had gone with Cox to buy beer on the evening of the murder, we fail to find Hardacre's testimony that they were seen together days before to be so prejudicial as to amount to ineffective assistance.

■ (2) Appellant argues counsel was ineffective in his cross-examination of his former wife, Nancie Ward. Counsel previously had succeeded in excluding on marital privilege grounds Ward's testimony as to telephone conversations with appellant and in limiting her testimony to statements made prior to her hypnosis. On cross-examination, counsel questioned Ward about her previously excluded statements, eliciting inculpatory admissions by appellant, and moved into evidence all of her prior statements. Counsel's purpose in so doing was to show that even her direct testimony was rendered unreliable by the hypnosis, and that the police had been overreaching in securing information from her. However, counsel's subsequent attempt to introduce the expert testimony of Dr. Eugene Levitt in order to prove unreliability was rejected by the trial court for the same reason it previously had ruled any products of the hypnosis session inadmissible. We

upheld that ruling on direct appeal, finding trial counsel "was creating a straw man in the cross-examination and attempting to attack it during his case-in-chief." *Drake, supra* at 688.

Appellant cites *United States ex rel. Barnard v. Lane* (7th Cir.1987), 819 F.2d 798, 805 for the proposition that the "spectrum of counsel's legitimate tactical choices does not include abandoning a client's only defense," and maintains publishing Ward's statements amounted to a virtual abandonment of appellant's defense of not guilty. He argues that because counsel knew Dr. Levitt's testimony had been excluded at other trials, the potential prejudice from introducing all of Ward's statements far outweighed any potential benefit, and notes that in specifications 15 and 47 of his motion to correct error, counsel claimed the trial court had erred in permitting the prosecution to introduce Ward's statements. Appellant reasons this confusion reveals counsel was not pursuing any legitimate strategy.

It is apparent counsel's performance in this regard was deficient. *See Messer v. State* (1987), Ind.App., 509 N.E.2d 249. However, appellant fails to demonstrate, in conformance with the second prong of the *Strickland* test, precisely how Ward's statements damaged his defense to an extent requiring reversal. To the contrary, their significance pales next to that of the testimony of Charles and Amy Drake, in which appellant's recounting of the crime in great detail was related, while the admissions made to Ward alone involve more general admissions and inferences of guilt. They moreover are generally cumulative of Charles' and Amy's testimony, unlike the inadmissible evidence elicited by counsel in *Messer.* There the evidence was not cumulative and concerned the defendant's plea-bargain attempt involving an offer to give information regarding numerous other burglaries. Counsel's introduction here of Ward's statements, standing alone, does not amount to ineffective assistance.

■ (3) Appellant argues counsel was ineffective in failing to continually object to, and preserve in his motion to correct error,

the State's allegedly improper impeachment of his sister and alibi witness, Jean Crownover. Appellant lived with his sister and her family. She testified appellant and her husband had worked on a car until about nine o'clock on the night of the murder and delivered the car to its owner, after which appellant left with Cox to get some beer and then appellant had helped her husband close up his shop behind the house and had gone to bed. In order to show bias, the State brought out on cross-examination that Jean's brother (appellant), her two sons and two former husbands had served time in correctional institutions.

Counsel objected to the State's question about the witness' sons and to the one about her former husbands; each objection was overruled. Clearly, as counsel testified at the post-conviction hearing, additional objections would have been superfluous. Counsel's inclusion of this issue in his motion to correct error likewise would have been fruitless. We have upheld repeatedly the use of convictions of relatives to show the probability of a witness' bias against the State. *Sweet v. State* (1986), Ind., 498 N.E.2d 924, *on remand*, 533 N.E.2d 136; *Williams v. State* (1986), Ind., 492 N.E.2d 28; *Clark v. State* (1976), 264 Ind. 524, 348 N.E.2d 27, *cert. denied*, 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711. Consequently, counsel clearly was not ineffective for failure to continually object and to preserve error regarding the State's impeachment of appellant's sister.

■ (4) Appellant argues counsel was ineffective in failing to locate and call as an alibi witness Jim Sutton, the owner of the car delivered by appellant on the night of the crime. Counsel testified that to the best of his recollection, he had stopped looking when his investigation showed Sutton's testimony would not be helpful. Appellant maintains it was crucial to his defense to have a disinterested witness corroborate his alibi, citing *Montgomery v. Petersen* (7th Cir.1988), 846 F.2d 407 which holds the failure to fully investigate and locate alibi witnesses constitutes ineffective assistance. Nevertheless, Sutton's testimony at the post-conviction hearing bears

out he had but a vague recollection that his car was repaired in Crownover's shop in 1977; there is no indication Sutton remembered appellant delivering his car on the evening of the murder. Absent such a showing, as was made in *Montgomery*, that the witness would have verified the alibi, we cannot find counsel was ineffective in failing to secure Sutton's testimony.

■ (5) Appellant argues counsel was ineffective for failing to call Norman Viola, appellant's employer in Florida for a number of years, as a character witness. Counsel testified he did not because Viola was not credible and could have testified appellant had struck Nancie. However, the record shows Viola gave a statement indicating appellant was trustworthy and remained non-violent in the face of Nancie's outbursts of temper, and Nancie herself testified appellant had never hit her. We agree that Viola's character testimony could only have aided the defense, yet we cannot find its omission so prejudicial as to undermine our confidence in the outcome and thus amount to ineffective assistance. *Smith, supra.*

■ (6) Appellant claims counsel was ineffective for failing to call John Moore as an expert witness on the effects of alcohol and other drugs upon memory so as to impeach the testimony recounting appellant's admissions made at the party in Miami. Counsel testified he did not call Moore because his testimony would have been merely speculative. Appellant has made no showing by way of offer of proof that Moore's testimony would have been otherwise. No ineffectiveness has been shown here.

■ (7) Appellant argues counsel was ineffective on cross-examination of Charles and Amy Drake in introducing Amy's prior statement, which referred to her having taken a polygraph test, and in bringing out instances of appellant's probationary status, involvement with drugs, and alleged threats to "get" Charles. The record reveals, however, that the polygraph test referred to was administered shortly after the murder, before appellant became a suspect, and was in regard to Amy's own

potential participation in the crime. Counsel testified his strategy was to be completely candid with the jury and to draw inferences of Charles' and Amy's animosity toward appellant. The record shows he brought out instances of money disputes over dividing the proceeds of a cache of marijuana and Charles' use of appellant's car while he was in jail for probation violation. Counsel's decision here not to conceal appellant's involvement in the drug dealing and chaotic domestic situations was a reasonable strategic attempt to show bias and prejudice in an effort to impeach Charles and Amy. This Court will not second-guess such a choice of strategy. *See Schiro v. State* (1989), Ind., 533 N.E.2d 1201, *cert. denied,* — U.S. ——, 110 S.Ct. 268, 107 L.Ed.2d 218.

█ (8) Appellant argues counsel was ineffective in failing to seek a jury instruction limiting the use of Michael Cox's statements related as hearsay at trial by police officers who initially investigated the murder. Cox did not testify at appellant's trial because he had been indicted for the same murder and was invoking his privilege against self-incrimination. His verbatim hearsay statements were admitted over continuing objection as part of the *res gestae* of the crime. Appellant maintains counsel should have tendered an instruction for the jury not to consider the statements as substantive evidence but only for the fact they had been made. He argues the failure to do so impaired his alibi defense as he was unable to cross-examine the declarant, Cox.

We note Cox's hearsay statements make no mention of his having been with appellant on the evening of the murder, referring only briefly to his stopping by the house where appellant lived that night some time after 10:00 p.m. and then leaving to visit Charles and Amy Drake in Lexington, Kentucky. We thus see little harm to appellant's alibi from Cox's statement. Moreover, counsel testified he sought no such instruction because he feared it would confuse the jury as well as preclude their consideration of much of the defense evidence. He also felt Cox's credibility had

been diminished sufficiently that such an instruction would result in more harm than benefit. In the context of the trial as a whole, counsel's decision here was a reasonable choice of strategy.

█ (9) Appellant asserts counsel was ineffective in failing to request a trial date within the 120–day time limit following his extradition from the State of Florida under the Interstate Act on Detainers (I.A.D.). He notes such a request would have required his trial to commence by April 14, 1982. Because the State requested a continuance of the original May trial date in order to locate missing witnesses Charles and Amy Drake, he argues had his trial been set within the 120–day limit he "surely would have been acquitted." However, counsel testified he and appellant agreed not to seek an early trial in order to have sufficient trial preparation time. Moreover, it seems likely the State would have been granted a continuance to locate the witnesses "for good cause shown in open court." Ind.Code § 35–33–10–4, art. 4(c). We find no ineffectiveness of counsel for failure to invoke the I.A.D. time limit.

In view of the foregoing, we cannot find that the evidence leads without conflict to the conclusion that the accumulation of trial counsel's errors and omissions rendered the result unreliable. The post-conviction court did not err in finding appellant had not been denied the effective assistance of trial counsel.

Appellant contends his appellate counsel was ineffective for failure to raise the issue of ineffective assistance of trial counsel on direct appeal of his conviction. He notes appellate counsel did not enter an appearance until after the motion to correct error had been denied, and that he testified that an evidentiary hearing or affidavits would be necessary to support such a claim. Because appellate counsel apparently reasoned the issue of ineffectiveness of trial counsel was unavailable on direct appeal, appellant argues the issue is cognizable on post-conviction relief.

Because the post-conviction court reached the merits of this claim in denying appellant's petition, we are left on review

only with that ruling on the merits. *Smith, supra.* Our disposition above on the merits of trial counsel's ineffectiveness, however, has rendered moot the issue of appellate ineffectiveness of counsel.

Appellant contends the post-conviction court erred in denying him a new trial based upon newly-discovered evidence. Dr. Roger Fossum, who performed the autopsy on Mrs. Heaton's body, testified at appellant's trial that death had occurred two to three hours on either side of 11:30 p.m. the night of the murder. At the subsequent trial of Michael Cox, he testified he had revised his opinion such that he now estimated the time of death to have been between 8:30 p.m. and 11:30 p.m. Appellant also cites as newly-discovered evidence the testimony of Jim Sutton as disinterested corroboration of his alibi that he was working on a car until nearly 10:00 p.m. that evening.

 To be entitled to a new trial, a petitioner must show, among other things, that the newly-discovered evidence would probably produce a different result. *Reed v. State* (1985), Ind., 479 N.E.2d 1248. Appellant here urges that the undisputed shift in the evidence of time of death, coupled with disinterested corroboration of his alibi, would lead to a not guilty verdict upon retrial. While such evidence would bear in appellant's favor, we point out that as noted above, Sutton's testimony at the post-conviction hearing was vague in that he did not identify appellant nor specify at what time his car was delivered. Dr. Fossum's revised time of death does shift the time of the killing closer to falling within the time frame of appellant's alibi, *i.e.,* up to approximately 10:00 p.m., but it still leaves open the remaining time until 11:30 p.m. Moreover, in light of his sister's testimony that he left to buy some beer with Cox after returning the car to Sutton, it would be speculative to conclude that a new jury would find appellant not involved in the murder.

The denial of a new trial based upon newly-discovered evidence was not error.

 Appellant contended *pro se* in his petition that the trial court committed fundamental error in failing *sua sponte* to instruct the jury to limit their consideration of Cox's hearsay statements to the fact they were made to investigators, to protect him against trial counsel's errors in admitting damaging testimony, and to insure he was tried within the 120–day I.A.D. time limit. He cites *Wilson v. State* (1943), 222 Ind. 63, 51 N.E.2d 848 where we held that due process requires the court to take more than ordinary care to protect the rights of the accused where counsel's ineffectiveness sinks to the level of no representation. The post-conviction court did not rule on these "free-standing" claims of fundamental error but instead denied them within the context of appellant's ineffectiveness of counsel claim. We agree with the court below that trial counsel was not ineffective and hold accordingly that appellant was not denied due process; thus the trial court had no duty to intervene.

The post-conviction court is affirmed.

SHEPARD, C.J., and DeBRULER and PIVARNIK, JJ., concur.

DICKSON, J., dissents without separate opinion.