John W. DRAKE, Petitioner–Appellant,

v.

Richard CLARK and Indiana Attorney General, Respondents–Appellees.

No. 92–1295.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1993.

Decided Jan. 24, 1994.

Robert L. Carter, Waukegan, IL (argued), for petitioner-appellant.

Linley E. Pearson, Atty. Gen., Laurel Taback Twinney, Office of Atty. Gen., Federal Litigation, Indianapolis, IN, for respondents-appellees.

Before COFFEY and ROVNER, Circuit Judges, and WILL, District Judge.*

COFFEY, Circuit Judge.

Petitioner-appellant, John W. Drake, appeals the district court's denial of his petition for writ of habeas corpus. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Drake was convicted of murdering Ruth Heaton, an elderly woman found dead on April 8, 1977, in Anderson, Indiana. The police originally suspected Michael Cox, the victim's handyman, of the crime because Cox had taken the victim to lunch on the day of the murder and had deposited an $11,000 forged check drawn on her bank account into his own. Further investigation, however, convinced the police that Cox was not the murderer.

The crime went unsolved until 1980 when Amy Drake, John Drake's sister-in-law, phoned the police and reported that during a 1977 drug party in Miami, Florida, Drake had confessed Heaton's murder to her. Amy Drake also reported to the police that Chuck Drake (John Drake's brother) and Nancy Ward Drake (John Drake's wife) were also present at the party and also heard Drake's confession. The police immediately contacted Nancy, who by that time had divorced Drake and was living in New Jersey, and obtained an oral telephone statement from her. Because the statement was not in detail, Nancy suggested to the police that she be hypnotized in order to provide a more specific statement. Approximately one month later the police travelled to New Jersey, hypnotized Nancy, and obtained a second statement from her. Drake was then arrested and charged with murdering Heaton.

Drake was scheduled to go to trial on May 17, 1982. On the eve of trial the State moved for a week's continuance and the trial court granted the adjournment because two witnesses, Amy and Chuck, both of whom heard Drake confess, failed to appear on the trial date. At that time the trial court also granted the State's motion to videotape the testimony of the pathologist who had conducted the autopsy on Mrs. Heaton because due to the new trial date, the pathologist would not be available for trial. The trial commenced on May 25, 1982.

When the prosecution called Nancy Ward to the stand, Drake objected to her testifying. Drake argued out of the presence of the jury that because Nancy had been hypnotized by the police, she should not be allowed to testify. The court ruled that the statement given under hypnosis was inadmissible, but that any testimony recollected independently of the hypnosis was admissible. After the jury returned to the courtroom, Nancy related during direct examination how Drake had confessed the murder to her. Nancy's testimony was strictly limited to the details given in the first statement taken by the police over the telephone prior to the hypnosis. During Nancy's cross-examination, counsel for Drake brought to the jury's attention the fact that Nancy had been hypnotized and had given a second statement under hypnosis; counsel was attempting to suggest to the jury that Nancy's hypnotism made her first statement unreliable and that the police, in their desperation to find the killer, had overreached. Without objection from the prosecution, counsel for Drake introduced into evidence Nancy's second statement. Later, during Drake's counsel's presentation of his case, Drake's attorney sought to offer into evidence expert testimony critical of the use of hypnosis, but the trial court refused to allow the testimony ruling that the proffered expert testimony would exceed the scope of the prosecution's direct examination in that it would deal with Nancy's responses while under hypnosis.

* The Honorable Hubert L. Will, District Judge for the Northern District of Illinois, is sitting by designation.

The jury convicted Drake of Heaton's murder, and the court sentenced Drake to life imprisonment. Drake appealed to the Indiana Supreme Court, arguing that the court should not have allowed Nancy to testify because she had undergone hypnosis. The Indiana Supreme Court declined to adopt a per se rule disqualifying witnesses who had been hypnotized. The Court first observed that although testimony that was the product of a hypnotic session was inadmissible, "other testimony from that same witness [is not barred] when it can be shown by clear and convincing evidence that the testimony is the product of a factual basis independent of the hypnosis." *Drake v. State*, 467 N.E.2d 686, 688 (Ind.1984) (*Drake I*).[1] The Indiana Supreme Court then concluded,

> In the case at bar, the direct testimony of Ward was limited to her recollections as evidenced by her statement made prior to the hypnosis. Although she was permitted to review the transcript of the hypnotic session prior to her in-court testimony, the trial court carefully limited the direct testimony to the statement taken over the telephone. We find ample independent basis for the in-court testimony. The trial court did not err [in allowing Nancy to testify].

*Id.*

In response to Drake's argument that the trial court erred in refusing to allow expert testimony concerning the unreliability of hypnotically-induced testimony, the Indiana Supreme Court determined the trial court's refusal to accept Drake's expert's testimony was proper, holding that the appellant "was creating a straw man in the cross-examination and attempting to attack it during his case-in-chief" and the testimony would have exceeded the scope of direct examination. *Id.* The court also rejected several other of Drake's arguments: that a violation of a witness separation order required reversal, that the jury was improperly allowed to separate after deliberations had begun, and that the court erroneously granted the one week continuance prior to trial, among others. *Id.* at 688–90.

After his unsuccessful direct appeal, Drake filed a petition with the trial court for post-conviction relief in which he argued his trial counsel rendered ineffective assistance in a number of ways. The post-conviction relief court denied Drake's petition. Drake appealed to the Indiana Supreme Court, which rejected the allegations of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and affirmed the denial of post-conviction relief. *Drake v. State*, 563 N.E.2d 1286 (Ind.1990) (*Drake II*).

On September 5, 1991, Drake filed a petition for writ of habeas corpus in federal court, mainly raising the same issues the Indiana Supreme Court had previously decided adversely to him. The district court denied the petition on December 18, 1991. Drake appeals the denial, and raises the following issues:

1. Whether he received ineffective assistance of trial counsel when counsel:

   a) placed into evidence the transcript of Nancy's second statement given under hypnosis;

   b) failed to properly interview a defense witness;

   c) failed to object or to vigorously cross-examine several witnesses who made an in-court identification of the defendant following an impermissibly suggestive out-of-court photographic identification by those same witnesses;

   d) failed to offer an important alibi witness;

   e) failed to move for a directed verdict at the close of the State's case and again at the close of all the evidence;

   f) failed to offer a jury instruction relative to the limited use of hearsay;

   g) failed to object to testimony that Amy Drake had taken a polygraph examination; and

---

**1.** Indiana adheres to the rule that testimony concerning matters consciously recalled for the first time through pretrial hypnosis is inadmissible in criminal proceedings. *See generally* Thomas M. Flemming, Annotation, *Admissibility of Hypnotically Refreshed or Enhanced Testimony*, 77 A.L.R. 4th 927 (1990).

h) failed to object to the introduction of Michael Cox's alibi statements.

2. Whether the trial court abused its discretion in a manner which denied Drake his fundamental right to a fair trial by:

a) failing to properly sequester the jury;

b) improperly allowing the prosecution to depose the pathologist;

c) granting the State a one week continuance;

d) failing to exclude Nancy Ward's testimony, while failing to allow the defense expert to rebut her testimony;

e) failing to separate the witnesses during trial; and

f) erroneously admitting Cox's alibi statement.

3. Whether the court erroneously allowed the prosecutor to cross-examine Drake about the details of his prior convictions.

4. Whether a rational trier of fact could have found Drake guilty of murder beyond a reasonable doubt based on the evidence presented by the State.

## DISCUSSION

### Standard of Review

In *Brewer v. Aiken*, 935 F.2d 850, 854–55 (7th Cir.1991), we noted

that our habeas corpus jurisdiction under 28 U.S.C. § 2254 "is limited to questions of federal and constitutional custody. In other words, 'federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.'" *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir.1990) (quoting *United States ex rel. Lee v. Flannigan*, 884 F.2d 945, 952 (7th Cir.1989)). "We do not sit as a super state supreme court to review error under state law," *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir.1983), so our review of the issues will focus only on the federal issues involved in this appeal. Under § 2254(d), we presume that state court findings of historical fact are correct, *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1247 (7th Cir.1988), but questions of

law or mixed questions of law and fact lack that presumption. *See Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982). Thus, we review such legal questions under a *de novo* standard of review. *See Sotelo*, 850 F.2d at 1247. *Id.* Further, "the law is clear that any claim not presented to the district court is waived on appeal." *Dortch v. O'Leary*, 863 F.2d 1337, 1342 (7th Cir.1988), *cert. denied*, 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 429 (1989).

■ Here, Drake raises four arguments previously not made in the district court: 1(c) (ineffective assistance: suggestive photographic lineup), 1(e) (ineffective assistance: failure to move for directed verdict), 3 (cross-examination relating to prior convictions), and 4 (sufficiency of the evidence). These four arguments are waived. *Id.* We turn to those issues that remain.

### 1. Ineffective Assistance of Counsel

■ The standard for reviewing a claim of ineffective assistance of counsel was enunciated by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). We have previously stated that the defendant bears a heavy burden when seeking to establish an ineffective assistance of counsel claim:

To prevail on his claim of ineffective assistance of counsel, [the defendant] must show that his trial counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688–92, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). We begin with a strong presumption that counsel rendered reasonably effective assistance, and consider counsel's effectiveness under the totality of the circumstances. *United States v. Zylstra*, 713 F.2d 1332, 1338 (7th Cir.), *cert. denied*, 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). To overcome that presumption, [the defendant] must identify 'acts or omissions [of counsel which] were outside the range of professionally competent assistance.' *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. To satisfy the prejudice

component of *Strickland*, [the defendant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' *Id.* at 695, 104 S.Ct. at 2068–69.

*United States v. Moralez*, 964 F.2d 677, 683 (7th Cir.) (quoting *United States v. Snyder*, 872 F.2d 1351, 1358 (7th Cir.1989)), *cert. denied,* —— U.S. ——, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992). The cumulative effect of individual acts or omissions "may be substantial enough to meet the *Strickland* test." *United States, ex rel. Kleba v. McGinnis,* 796 F.2d 947, 958 (7th Cir.1986).

In a federal habeas challenge to a state criminal judgment, the question of effectiveness of counsel "is a mixed question of law and fact." *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. "[S]tate court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d) . . . the performance and prejudice components of the effectiveness inquiry are mixed questions of law and fact." *Galowski v. Murphy,* 891 F.2d 629, 635–36 (7th Cir.1989), *cert. denied,* 495 U.S. 921, 110 S.Ct. 1953, 109 L.Ed.2d 315 (1990) (quoting *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070).

▉ Initially Drake argues his counsel was ineffective for placing the transcript of Nancy Ward's hypnosis session into evidence after the trial court had ruled that any evidence relating to Nancy's hypnosis was inadmissible. As counsel testified at Drake's Indiana post-conviction relief hearing, counsel's purpose in questioning Nancy Ward about the hypnotism was to show that her direct testimony was rendered unreliable by the hypnosis and that the police had overreached in securing information from her. Although the Indiana Supreme Court found counsel's attempt to impeach Nancy Ward's hypnosis through the expert's testimony deficient, *Drake II,* 563 N.E.2d at 1289, we agree with that court's conclusion that Drake failed to demonstrate any resultant prejudice in light of the cumulative nature of both Nancy Ward's testimony regarding the first, non-hypnotically induced statement and that of other witnesses (Charles and Amy) who testi-

fied concerning Drake's confession of his guilt. Without a finding of prejudice, Drake is not entitled to relief under *Strickland.* See *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1015 (7th Cir.1987), *cert. denied sub nom. Cross v. Illinois,* 498 U.S. 842, 111 S.Ct. 122, 112 L.Ed.2d 91 (1990).

▉ Because the State's case-in-chief had ended sooner than Drake's counsel expected, counsel moved for a one-day continuance since not all of his defense witnesses were present in the courtroom to testify. The trial court denied the motion for the one-day continuance and required Drake to commence his case-in-chief immediately following the conclusion of the State's case-in-chief. Counsel for Drake chose to call Wilbur Hardacre as the first defense witness, since Hardacre was present in the courtroom. Mr. Hardacre, a friend and neighbor of the victim, unexpectedly testified that he had seen a man fitting Drake's description in his neighborhood with Michael Cox a few days prior to the murder. Drake contends his attorney was ineffective for failing to know that Hardacre would testify as he did. Drake argues that because the State produced no eyewitnesses at trial placing him at the murder scene, counsel's failure to know that Mr. Hardacre would positively identify him as Cox's companion rendered his assistance ineffective.

Counsel testified at the post-conviction hearing that prior to trial, Mr. Hardacre had been shown photographs and was unable to provide a good description of Cox's companion, and that his strategy in calling Hardacre was to show Cox's relationship with the victim and to place Cox, rather than Drake, in the neighborhood around the time of the murder. We agree with the Indiana Supreme Court that calling Mr. Hardacre to testify was a matter of trial strategy and that it was not reasonably foreseeable that Mr. Hardacre would identify Drake at trial as the man who accompanied Cox. *Drake II,* 563 N.E.2d at 1289.

▉ Drake claims his counsel was ineffective for failing to locate and call Jim Sutton as an alibi witness. Drake and Cox allegedly repaired Mr. Sutton's car on the day of the

murder and delivered the car to Mr. Sutton that night. Counsel testified at the post-conviction hearing that he stopped looking for Mr. Sutton when his investigation disclosed that Mr. Sutton's testimony would not be helpful. Mr. Sutton testified at the hearing that he had only a vague recollection that his car was repaired in 1977. The Indiana Supreme Court found that there was no indication that Mr. Sutton remembered Drake delivering his car on the night of the murder. *Id.* at 1290. Because Mr. Sutton could not have verified Drake's alibi, we agree with the conclusion of the Indiana Supreme Court that counsel was not ineffective for failing to secure Mr. Sutton's testimony. *See id.*

■ Drake claims that his counsel's failure to tender a jury instruction on the use of hearsay evidence amounted to ineffective assistance. At trial, Michael Cox invoked his privilege against self-incrimination and did not testify, but other witnesses were permitted, over counsel's objection, to relate Cox's earlier statements as part of the *res gestae* of the crime. *Id.* at 1291. We agree with the Indiana Supreme Court's conclusion that because the hearsay statements made no mention of Cox having been with Drake on the night of the murder (aside from briefly mentioning that Cox had stopped by the house where Drake lived that night), Cox's statements were not harmful to Drake. *Id.* We agree with the court's conclusion that counsel's decision not to tender a limiting instruction was also a matter of trial strategy; counsel reasonably felt that Cox's credibility had been sufficiently diminished such that an instruction on the limited use of hearsay testimony might very well result in more harm to Drake than benefit.

■ Drake next argues counsel was ineffective for introducing a statement given to the police by Amy Drake which included references to a polygraph examination Amy Drake had taken. The polygraph test referred to in the statement was given soon after Heaton's murder, before Drake became a suspect, and was limited to the question of whether Amy participated in the crime. The statement in which the references to the polygraph were made actually exculpated Drake because in that statement Amy Drake denied Drake had confessed to Heaton's murder. Counsel testified that Amy Drake's statement was introduced to show Amy Drake lied in the statement and to shift the jury's suspicions from John Drake to her. Drake also claims counsel should not have introduced evidence of his drug involvement. Counsel testified at the post-conviction hearing that he elicited testimony concerning Drake's drug involvement with Chuck and Amy Drake in order to be completely candid with the jury. We agree with the Indiana Supreme Court that counsel's decision not to conceal Drake's drug involvement was a reasonable trial strategy, as was his decision to introduce Amy Drake's statement.

■ Finally, Drake suggests his trial counsel was ineffective for failing to object to the presentation of Cox's statements relating to his alibi. Cox, who by the time of Drake's trial had also been indicted for Heaton's murder, invoked his privilege against self-incrimination and did not testify at Drake's trial. His verbatim hearsay statements concerning his alibi were admitted as part of the *res gestae* of the crime. These statements, however, made no mention of Cox's having been with Drake on the night of the murder aside from the fact that Cox had stopped by the house where Drake lived on his way to Lexington, Kentucky. Furthermore, we observe that Drake's attorney testified at Drake's post-conviction relief hearing that he did not seek a limiting instruction on the use of Cox's hearsay statements because "a great deal of information that we put in ourself came in through hearsay," and that he feared that the limiting instruction would preclude the court's admission of the hearsay evidence he was able to introduce and might also confuse the jury. As counsel explained, he had hoped to convince the jury that Cox "was a compulsive liar" by showing that Cox's statements were inconsistent with Drake's. After reviewing the record, we conclude counsel was not ineffective for failing to object to Cox's hearsay statements. We hold the district court's denial of Drake's petition for a writ of habeas corpus based on the ground of alleged ineffective assistance of trial counsel was proper.

## 2. Fair Trial

■ Drake claims that for a number of reasons he was denied a fair trial. Initially, he contends the trial court's failure to sequester the jury denied him a fair trial because the jurors may have been exposed to publicity (newspaper articles) concerning the trial. "Sequestration is an extreme measure, one of the most burdensome tools · of the many available to assure a fair trial." *United States v. Greer*, 806 F.2d 556, 557 (5th Cir.1986). Indiana entrusts the decision of whether to sequester a jury to the sound discretion of the trial court. *See Clemens v. State*, 610 N.E.2d 236, 241 (Ind.1993).

Drake has failed to establish he was denied a fair trial by the trial court's failure to sequester the jury. Drake's claim that the jurors were exposed to newspaper articles concerning the trial is unsupported by evidence in the record. In fact, the trial court questioned the jurors about whether they had read newspaper accounts of the case or heard about the case on the radio or television and the jurors indicated that they had not had any contact with these possible types of influence.

■ Drake next contends he was denied a fair trial when the trial court's pretrial order to separate witnesses was allegedly violated. The separation of witnesses, however, is not a denial of due process. *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). Thus, the district court properly refused to grant Drake habeas relief on this ground. In any event, we agree with the Indiana Supreme Court that the trial court did not abuse its discretion by refusing to strike the testimony of the witness involved in the violation of the separation order. *Drake I*, 467 N.E.2d at 689. As the court noted, "[t]he trial court was in the best position to evaluate" the severity of the violation, and the trial court did not deem the violation sufficient to warrant the exclusion of the witness's testimony. *Id.*

■ Drake next contends he was denied a fair trial when the trial court allowed the pathologist who performed the autopsy on the murder victim to give his testimony on videotape. Drake's trial was scheduled to begin on May 8, 1982, but was delayed for one week on the State's motion because Amy and Charles Drake had not appeared for trial. The later trial date prevented the pathologist from giving live testimony because the pathologist was a member of the armed forces and was obligated by his military duty to travel out of the country at the time the trial was scheduled to resume. The trial court granted the motion to allow the pathologist to testify on videotape and the witness's testimony was presented at trial this way, which is an accepted practice in this day.

This court has observed that "[e]rrors in the management of a state criminal trial do not deny the defendant due process of law ... unless they are so harmful to the cause of truth that, singly or cumulatively, they make the defendant's conviction fundamentally unfair[.]" *Bell*, 861 F.2d at 170. In *Bell*, the defendant · argued that the trial court's limitation on the scope of a witness's testimony denied him a fair trial and entitled him to habeas relief. This court rejected the argument with the observation quoted above. So it is here. The trial court's decision to allow the pathologist to testify on videotape was a sound managerial decision. The trial court afforded Drake full opportunity to cross-examine the witness during the videotaping. The district court properly denied Drake relief on this issue.

■ Drake argues the trial court erred when it granted the one week continuance to the State to locate Amy and Charles Drake while subsequently denying Drake's request for a one-day recess after the close of the State's case-in-chief. He contends the trial court's grant of the State's motion and the denial of his motion created an impermissible inference in the minds of the jurors that the trial court was sympathetic to the State. Once again, however, Drake has raised an issue that does not sufficiently implicate due process concerns to warrant habeas relief. Although "in some circumstances" the *denial* of a motion for continuance could implicate due process ("if the witness was crucial to the prosecution and the defense needed time to develop evidence to counter [the witness's]

testimony"), *id.*, we fail to see how the *grant* of the State's motion for continuance denied Drake due process and a fair trial. Drake raised no speedy trial concerns. As the *Bell* court remarked, "[w]e find it hard to imagine circumstances in which a scheduling decision unrelated to the right to a speedy trial would deny the defendant due process of law. It trivializes the Constitution and the function of federal habeas corpus to argue that the minutiae of trial scheduling furnish grounds for federal intervention in the state criminal process." *Id.* at 170–71. The trial court correctly denied Drake relief on this ground.

In a rehash of his ineffective assistance of counsel argument presented (and rejected) earlier in this order, Drake contends Nancy Ward should not have been permitted to testify at trial because of her prior hypnosis. The Indiana Supreme Court, however, rejected this argument and declined to impose a per se rule disqualifying the testimony of witnesses who had been hypnotized. It noted that in *Pierson v. State,* 441 N.E.2d 468 (Ind.1982), it had previously held that the fact that a witness had been hypnotized was simply a matter of weight to be considered by the trier of fact. In Drake's case, the Indiana Supreme Court observed that the trial court carefully limited Ward's testimony to her first statement taken over the telephone. That statement was given before the hypnosis session and thus was independent of and free of any taint from the statement given under hypnosis. Drake also claims the trial court erred in excluding his expert's testimony about the unreliability of using hypnosis evidence at trial. As the Indiana Supreme Court noted, such testimony went beyond the scope of Nancy Ward's direct examination and was essentially used to create a "straw man" to attack during his case-in-chief. *Drake I,* 467 N.E.2d at 688. In light of the independent nature of Nancy Ward's first statement and the testimony of other witnesses recounting Drake's confession, we are hard-pressed to conclude Drake was denied a fair trial because the trial court allowed Nancy to testify about matters independent of the hypnosis but refused to allow Drake's expert to testify about the unreliability of hypnosis.

Drake also contends the trial court erred by allowing the jurors to use their own cars to travel between the court and the hotel during their deliberations. While the Indiana Supreme Court acknowledged that a jury should not normally be permitted to separate once deliberations had begun, that court found that the jury was released only for the few minutes it took to drive the short distance to the hotel. *Drake I,* 467 N.E.2d at 689. Because Drake has presented no evidence that the jurors had any improper contact with extraneous influences, Drake has failed to show he was denied a fair trial.

Finally, Drake contends the trial court erred in allowing a police officer to relate to the jury hearsay statements Cox had made concerning his whereabouts on the day of the murder. Cox's statements were made to the police during their initial investigation of the murder and did not mention his having been with Drake, except to mention briefly that Cox had stopped by Drake's house some time after 10:00 p.m. on his way to visit Chuck and Amy Drake in Lexington, Kentucky. Cox did not testify at Drake's trial for he had invoked his privilege against self-incrimination because he also had been indicted for Heaton's murder. The trial court admitted Cox's verbatim statements over Drake's hearsay objection as part of the *res gestae* of the crime. As noted previously, Cox's statements related only to Cox's whereabouts on the day of the murder, did not implicate Drake, and were not prejudicial to him. *See Drake,* 563 N.E.2d at 1291. Their admission did not deny Drake a fair trial.

We hold the district court's denial of Drake's petition for writ of habeas corpus was proper. The judgment is

AFFIRMED.