33 F.3d 56
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Claxton WILLIAMS, Petitioner-Appellant,
v.
Salvador A. GODINEZ and Roland W. Burris,
** Respondents-Appellees.
 No. 92-3604.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 24, 1994.
Decided Aug. 29, 1994.
 
 1
 Before POSNER, Chief Judge, ROVNER, Circuit Judge, GILBERT, Chief District Judge*.
 
 ORDER
 
 2
 Claxton Williams appeals the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. Sec. 2254. On September 24, 1985, Williams struck Mary Duckworth and fatally stabbed Clay Woods. Although Williams claims that he acted in self-defense, a jury convicted him of murder, aggravated battery, armed violence, and unlawful use of a firearm by a felon. He is currently serving a 75-year sentence at the Stateville Correctional Center in Illinois.
 
 
 3
 On appeal, Williams claims that he was denied effective assistance of counsel in violation of the Sixth Amendment. He complains that his attorney permitted the jury to deliberate for hours under an erroneous jury instruction, failed to move for severance of the firearm charge, failed to request a limiting instruction regarding the evidence of Williams' prior felony conviction, and failed to present evidence of bias that would have impeached several of the state's witnesses. In addition to the ineffective assistance claim, Williams contends that the prosecution violated the rule of Doyle v. Ohio, 426 U.S. 610 (1976), when it attempted to impeach Williams with the fact that he was silent following his receipt of the post-arrest warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). We affirm.
 
 I.
 
 4
 To prevail on his ineffective assistance of counsel claim, Williams must overcome a strong presumption that the attorney provided competent representation and must establish that his attorney's performance fell below an objective level of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Precin v. United States, 23 F.3d 1215, 1218 (7th Cir.1994). Williams must also demonstrate that his attorney's errors were so serious that he was deprived of a fair trial. Lockhart v. Fretwell, 113 S.Ct. 838, 842 (1993). A fair trial is one whose result is reliable. United States v. Montgomery, 23 F.3d 1130, 1133 (7th Cir.1994); United States v. Flores, 5 F.3d 1070, 1079 (7th Cir.1993), cert. denied, 114 S.Ct. 884 (1994).
 
 
 5
 Williams first argues that his attorney was ineffective in failing to correct the seriously flawed self-defense instruction before it was read to the jury and by subsequently failing to insist that the corrected instruction be read to the jurors rather than submitted to them in writing. The instruction that was originally read to the jury stated:
 
 
 6
 To sustain the charge of murder as alleged in Counts I through III, the State must prove the following propositions:
 
 
 7
 First: That the defendant performed the acts which caused the death of Clay Woods; and
 
 
 8
 Second: As to Count I, that when the defendant did so, he intended to kill or do great bodily harm to Clay Woods,
 
 
 9
 or
 
 
 10
 As to Count II, that he knew that his acts would cause death or great bodily harm to Clay Woods,
 
 
 11
 or
 
 
 12
 As to Count III, that he knew his acts created a strong probability of death or great bodily harm to Clay Woods; and
 
 
 13
 Third: That when the defendant did so, he did not act under a sudden and intense passion resulting from serious provocation by another;
 
 
 14
 or
 
 
 15
 That when the defendant did so, he did not reasonably believe the force used was necessary to prevent imminent death or great bodily harm to himself or another;
 
 
 16
 or
 
 
 17
 That when the defendant did so, he did not have an unreasonable belief the force used was necessary to prevent imminent death or great bodily harm to himself or another.
 
 
 18
 Because the three parts of the third proposition were erroneously separated by "or" rather than "and," the jury could have found Williams guilty of murder even if the State failed to prove one or two of the three factors beyond a reasonable doubt. After the jury had deliberated for several hours, the trial court noticed the error, corrected it on the written instruction, and sent the written instruction back to the jury. The court did not call the jury back into the courtroom to orally correct the instruction. Defense counsel agreed to this procedure.
 
 
 19
 The State contends that Williams procedurally defaulted this claim by failing to sufficiently present it to the Illinois appellate court on direct appeal. We disagree. Williams' appellate brief read: "Counsel's failures were many and prejudicial. In the area of instructions, he failed to insure that the jury was properly instructed as to murder, Counts I through III (Point 1)." Although this conclusory statement alone might arguably be insufficient to alert the state court that Williams was raising a federal ineffective assistance of counsel claim relating to the jury instruction issue ( see Verdin v. O'Leary, 972 F.2d 1467, 1475-76 (7th Cir.1992)), the parenthetical referred the court to Point 1 of Williams' brief, which specifically discussed the faulty self-defense instruction and the prejudicial delay in correcting the error. Although Williams failed to provide any analysis or case law to support his ineffective assistance claim, he did sufficiently present the question to the state court. We will therefore proceed to the merits.
 
 
 20
 The trial court noticed the error when the jury asked a question about another aspect of the instruction. The record indicates that the court corrected the error on the written instruction in blue ink to ensure that the jury understood precisely what had been changed. The court then returned the instruction to the jury and had their attention called to the correction. We generally assume that the jury follows the court's instructions. United States v. Cappas, No. 93-3019, slip op. at 14 (7th Cir. July 20, 1994); United States v. Schweihs, 971 F.2d 1302, 1321 (7th Cir.1992). "If the trial judge believes [the curative instructions] were taken seriously ... we will have little basis for disbelieving him." United States v. Agrell, 965 F.2d 222, 226 (7th Cir.1992) (quoting United States v. Mazzone, 782 F.2d 757, 764 (7th Cir.), cert. denied, 479 U.S. 838 (1986)). The jury had no further questions for the court regarding this instruction and there is no indication in the record that it did not understand the changes. Thus, as the district court found, any error that the trial attorney may have committed was corrected by the court's amended jury instruction and did not prejudice Williams' defense.
 
 
 21
 Williams next contends that his attorney's failure to move for severance of the firearm charge prejudiced his defense on the other charges by exposing the jury to his prior felony conviction. But Williams' attorney did file a motion in limine requesting a bifurcated proceeding on the firearm charge. Williams agreed that if his motion was granted, he would stipulate to the prior conviction. (Tr. 10.) Although defense counsel did not use the term "sever" or file a motion to sever, he did ask the trial judge to separately adjudicate the firearm charge. We therefore find no error here.
 
 
 22
 Williams also argues that because the trial judge denied the request for a bifurcated proceeding, his counsel should have requested a jury instruction clarifying the limited purpose for which the prior conviction could be used. Under the circumstances of this case, however, we are convinced that the attorney's failure to tender a limiting instruction was a tactical decision and does not constitute constitutionally deficient performance. See Drake v. Clark, 14 F.3d 351, 357 (7th Cir.1994); Biggerstaff v. Clark, 999 F.2d 1153, 1154 (7th Cir.1993).
 
 
 23
 At the jury instruction conference, Williams' attorney objected to the prosecution's suggested instruction regarding the prior conviction, which stated that evidence of the conviction should be used only in assessing Williams' credibility. Williams' attorney argued that the prior conviction was not in fact allowed for the purpose of impeaching Williams, but was admitted to establish an element of a charged offense. He also stated, "I don't care to emphasize that any more than it already has been, due to the fact that it is, under the Court's earlier rulings, an element of one of the offenses." (Tr. 598.) Given that Williams' testimony was the only evidence supporting his claim of self-defense, the attorney's fear that further mention of the prior felony conviction might unfairly prejudice Williams on the murder and aggravated assault charges was reasonable. See Drake, 14 F.3d at 357; Biggerstaff, 999 F.2d at 1155.
 
 
 24
 The final ground for Williams' ineffective assistance of counsel claim concerns his attorney's alleged failure to sufficiently establish the bias of four eyewitnesses, all of whom testified that Williams was the aggressor in the confrontation with Duckworth and Wood. First, Williams alleges that his attorney failed to present to the jury that he had been involved in two prior altercations with Woods' cousin, government witness Robert Given. But the record establishes that Williams attorney did attempt to elicit this fact. (Tr. 204-07.) Williams also contends that he had previous encounters with Grayson and Reed, and that he had been sexually involved and fathered a child with Duncan's wife. Although the trial attorney's failure to raise these issues may well be considered deficient, Williams has not demonstrated that the omission resulted in an unfair trial, because as the district court determined, the evidence that Williams did not act in self-defense was overwhelming. See Flores, 5 F.3d at 1080 (abundant evidence establishes that the result of the trial was reliable). In addition to the testimony of Grayson, Reed, and Duncan, two additional eyewitnesses, Mary Duckworth and Givens, testified that Williams was the aggressor against both Duckworth and Woods. (Tr. 172-79, 331-34.) Moreover, five police and corrections officers--Jerry Hathaway, Richard Anderson, Stanley Rush, John Morgan, and Mark Forsythe--testified that on the night of his arrest, Williams stated that he had done it to "get even" for Duckworth's and Woods' alleged assault on a relative. (Tr. 53, 77, 109, 116, 223.) Police officers also testified that they did not observe any injuries on Williams on the night of his arrest. Tr. 53, 109, 116. This testimony was bolstered by police photographs of Williams' torso, arms, and hands from the front, back, and sides, which revealed no injury. Ex. 38-40. Finally, Williams was the only witness to testify in support of his self-defense theory. As the district court noted, he was unable to explain with any specificity his reasons for believing that Duckworth was about to draw a knife on him (Tr. 443-52), and he could not provide details about his supposed struggle with Woods for the knife that Woods allegedly had pulled on him (Tr. 462-72). Williams' counsel's failure to impeach Grayson and Reed did not therefore deprive Williams of a fair trial.
 
 II.
 
 25
 Williams also contends that the prosecution impermissibly elicited testimony from the arresting police officers that on the night of his arrest, Williams did not complain of any injuries or request medical assistance. Williams contends that this testimony, intended to undermine his testimony that he had acted in self-defense, violated Doyle v. Ohio, 426 U.S. 610 (1976), which held that post-Miranda silence cannot be used to impeach a defendant's testimony at trial.
 
 
 26
 Technically, Williams procedurally defaulted this issue by failing to raise it in his petition for leave to appeal to the Supreme Court of Illinois. He has not offered any explanation for that omission. See Murray v. Carrier, 477 U.S. 478, 492 (1986); Resnover v. Pearson, 965 F.2d 1453, 1458-59 (7th Cir.1992), cert. denied, 113 S.Ct. 2935 (1993). Because the state did not raise the issue of procedural default before the district court, however, it has waived that argument. See Fagan v. Washington, 942 F.2d 1155, 1157 (7th Cir.1991). Nonetheless, Williams has failed to show that the alleged Doyle violation had a substantial and injurious effect on the jury's verdict. See Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993). As we have already noted, the police officers' observations and the police photographs demonstrated independently that Williams suffered no injury as a result of his confrontation with the victims. See id. (references to petitioner's post-Miranda silence were cumulative). In addition, the evidence undermining Williams' self-defense argument was extensive, as we have already discussed.
 
 III.
 
 27
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable J. Phil Gilbert, Chief District Judge of the United States District Court for the Southern District of Illinois, is sitting by designation
 
 
 **
 Salvador A. Godinez is substituted for his predecessor in the office of the Warden of Stateville Correctional Center, Thomas Roth, and Roland W. Burris is substituted for his predecessor in the office of Attorney General for the State of Illinois, Neil Hartigan. Fed.R.App.P. 43(c)(1)