Steven MESSER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 37A03–8702–CR–31.

Court of Appeals of Indiana,
Third District.

June 30, 1987.

Rehearing Denied Aug. 5, 1987.

Max Cohen, Stephen Bower, Cohen and Thiros, P.C., Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Steven Messer appeals his conviction of burglary, a Class C felony. (IND.CODE § 35–43–2–1 (1982)). Messer presents a number of issues for review; however, it is only necessary to discuss one of these. This issue is, whether Messer received ineffective assistance of counsel at his trial.

The evidence presented to the jury reveals that around 10:30 P.M. on June 13, 1984, the Jasper County Sheriff's Department received a silent alarm indicating that a barn on the Ward farm had been broken into. Deputy Carl Benner was dispatched to the scene, arriving approximately fifteen minutes later. At the scene the deputy observed that a security light was out and when he entered the barnyard he saw a pickup truck, with an individual in the passenger seat, parked near the barn.

The deputy used his patrol car PA system to order the person out of the pickup.

Instead, Messer appeared from around the barn. He paused near the truck and then approached the patrol car. Messer was ordered to stop and kneel. He was handcuffed and placed in the car. Deputy Benner then noticed that the person in the truck was gone.

After a back-up deputy arrived, the officers conducted a search and found that a door to the barn had been broken open. Benner had not seen Messer in the barn and the search revealed that there was no one inside. Benner also noticed a shoe print outside the door. He testified that the print looked like Messer's shoe.

The owner, Roger Ward, was called and based on his inspection it appeared that, inside the barn, a vacuum cleaner and a tool box had been moved from their usual places. Further, Ward testified that a grinder and a cutting torch head, normally kept inside, were outside. On cross-examination Ward testified that he did not know if these tools had been stored inside the night before. Ward also assisted in searching Messer's truck, and could not identify anything as belonging to the farm.

The back-up deputy then searched the surrounding area for the missing passenger, who Messer identified as a hitchhiker he had picked up. The passenger was never found, but forty-five minutes later the back-up deputy did find two hitchhikers nearby. A records check revealed that the two had outstanding burglary warrants, but the warrants were inactive and so the pair was released.

Deputy Benner questioned Messer at the scene. Messer claimed that he knew nothing about the break-in. He said that his truck had overheated and he stopped to get some water for the radiator. He admitted that he did not have a license to drive and that he had been drinking. He said he was relieving himself when he heard Benner's PA announcement. On the basis of this evidence, Messer was arrested and charged with burglary.

In addition, at trial, defense counsel elicited testimony from Deputy Benner that Messer had offered to plead guilty to driving without a license in exchange for giving information about other recent thefts in the county. Also on direct examination Messer was asked about a prior burglary conviction and a misdemeanor criminal mischief sentence. On cross-examination, Messer was permitted to answer, without objection, questions regarding his juvenile record, and questions about pending charges in a neighboring county.

On appeal, Messer claims that he received ineffective assistance of counsel because of the cumulative effect of his trial counsel's errors. The Indiana Supreme Court has frequently repeated the standard of review for ineffective assistance claims. Most recently, in *Stephens v. State* (1987), Ind., 506 N.E.2d 12, the Court said:

"In reviewing ineffective assistance claims, the following guidelines must be considered:

'The proper standard for attorney performance is that of reasonably effective assistance. * * * Judicial scrutiny of counsel's performance must be highly deferential. * * * * * * the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. * * * A * * * claim * * * has two components. First the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense.' *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674." 506 N.E.2d at 14.

Thus, in the present case, it is necessary to first examine Messer's trial counsel's performance to see whether it was deficient, and if so, then whether the deficiencies prejudiced Messer's defense.

There are two instances when Messer argues that his trial counsel's performance was ineffective.[1] The first relates to the evidence of Messer's attempt at plea bargaining and his exercise of his Fifth

---

**1.** Messer also points to several other instances of alleged ineffective assistance; however, the disposition of this case makes it unnecessary to discuss these.

Amendment right to remain silent. This evidence came in during defense counsel's cross-examination of Deputy Benner. Defense counsel elicited a narrative description of post-arrest events, and the following exchange occurred:

"Q  Now, afterwards how—what did you do then?

A  At the jail?

Q  Yes sir.

A  I asked him if he would give me a statement or make any statement about the Ward's Farm, he said, no.

Q  So, was that it as far as your conversation with Mr. Messer?

A  He insinuated he wanted to make a deal. If I didn't charge him with the burglary and just charged him with not having a vehicle registered right he would give me information on other thefts and burglaries.

Q  And what did you tell him to that?

A  I didn't want to make a deal. I wanted to know about the Ward Farm.

Q  What did he say?

A  He said he wasn't going to say anything."

Thus, at defense counsel's behest, Deputy Benner testified to Messer refusing to answer questions and to Messer seeking to plead guilty to an uncharged crime and admitting intimate knowledge of other criminal activities in order to avoid prosecution for the instant offense, all without objection or motion to strike.

■ Evidence of a criminal defendant exercising the constitutional right to remain silent is clearly inadmissible for purposes of impeachment. *Yurina v. State* (1985), Ind., 474 N.E.2d 93; *Jones; Payne v. State* (1976), 265 Ind. 447, 355 N.E.2d 402. Evidence of a criminal defendant's efforts to plea bargain is also generally inadmissible. *Moulder v. State* (1972), 154 Ind.App. 248, 289 N.E.2d 522. The present case does not reach the fundamental error described in *Yurina*, because the evidence of Messer's silence was not introduced to impeach, nor was the plea bargaining attempt apparently introduced to prove consciousness of

guilt; however, this does not lessen the highly damaging impact of this evidence. Application of even the most deferential standard of review to defense counsel's failure to prevent admission of this clearly inadmissible evidence, demonstrates deficient performance.

The next area that Messer points out to support his claim of ineffective assistance is his defense counsel's failure to object to portions of the State's final argument. There are three separate instances where Messer contends the prosecution's final argument was objectionable and prejudicial.

First, while the prosecution was reviewing the testimony of the witnesses, the following statement was made:

"Then you've got the testimony of Steve Messer, a burglar, a convicted burglar. A person who has been in the penitentiary until 6 months prior to this. And he's giving you his story as to what happened. It's a question of who are you going to believe."

Then on rebuttal, while discussing Messer's testimony, the prosecution argued:

"He says if he was a burglar, if he was going to burglarize the place, he would have had the car someplace else than where he had it. You also have to remember that Steve Messer is a convicted burglar. A burglar is going to think of things. He knows he can get caught because he's been caught before. He will say what kind of a story can I concoct that I might be able to weasel out of it. You have heard his story as to how he is trying to weasel out of it. It just doesn't wash to beat all the evidence. He says I want to penalize him for his prior crimes. I don't want to penalize him for his prior crimes, except that his prior crimes show a propensity. His prior crime of burglary shows a propensity to steal. A propensity to commit burglary. That fact that he was driving while intoxicated, has never had a driver's license, and didn't have his car registered shows a propensity for disregard to the law. We are not prosecuting him for those, but it shows his propensity. He doesn't care about the law. He doesn't

respect the law. He cares about Steve Messer."

and finally, at the close of its rebuttal, while discussing the necessary quantum of proof, the prosecution told the jury:

"Now, we talk about reasonable doubt. You are going to go home tonight and you are going to be with your family, your friends, and they will ask well, what have you done in the past few days? Oh, I had a jury. Oh yeah? How long did it last? Oh, a couple of days. What kind of a case was it? It was a criminal case. Oh really. I bet that was interesting. Well, yeah. It was. Well, tell me about it. Well, it was a burglary charge. Oh yeah. Somebody stole something? Well, not really. Well, what happened? Well, there was a fellow out here east of Rensselaer. He had a burglar alarm, a silent alarm. The alarm went off in at the jail. and the police were worried. They got out there and they found the guy that was with a truck. Oh yeah? Was the truck parked? Was he loading stuff out of the building. No, not really. He had the truck parked some distance away, back in the shadows. There was some stuff outside of the building. There was a doorknob broken off. The doorknob had been taken off fairly recently because there had been some dew on the door and it had been disturbed, the policeman could tell. Oh yeah? Did they catch the guy? Well, yeah. They did. They caught the guy coming out from behind the building. There was somebody in the truck with him, but that guy took off. they didn't get him. The guy that they caught came out from behind the building. Well, it sounds like they got him. Well, that's going to depend on your verdict. Did they get him? Well, tell me more about this case. Well, the fellow had a record. He had done time for burglary. Oh yeah? He had never had a driver's license. He had been drinking that night. He didn't have his plates registered. He said he had truck trouble, but they couldn't find any evidence under the truck of either oil leaking, dripping down at all, or water coming out of the radiator. The friend will say, oh really? Well, what else? What else did they find? Well, the security lights had been broken out. It had been working for at least the last time anybody had it on. Your friend is going to say well, did you find him guilty? What are you going to say? What is your friend's reaction going to be to what you said. If you say no, I didn't find him guilty. He is going to say what? On evidence like that. A convicted felon told you that cockamamie story and you believed it? With that kind of evidence? Or are you going to say we found him guilty. Your friend will say you should have. Sounds like a big case to me. Doubt, maybe. But reasonable doubt? Don't leave your common sense out here. Remember, it is up to you. Reasonable doubt. There was no reasonable doubt. No reasonable doubt at all. No reasonable person, when they hear what this evidence is, as you heard this evidence, is going to come up with any verdict except guilty. I ask you to return that verdict."

Messer argues that these statements were objectionable and highly prejudicial, because they were an attempt to convince the jury to convict him for reasons other than his guilt of the immediate burglary charge. He contends that through the above statements the prosecution urged the jury to convict him because he had only been out of prison for six months, because his past burglary conviction proved his alleged propensity to commit burglary, and because the jury would be subject to public ridicule if it acquitted him.

It is highly improper to urge a jury to convict for any reason other than guilt of the specific crime charged. *Washington v. State* (1979), 271 Ind. 97, 390 N.E.2d 983. It is also true that the evidence of Messer's prior convictions was inadmissible to prove his criminal propensities. *Malone v. State* (1982), Ind., 441 N.E.2d 1339. In the context of the present appeal, it is unnecessary to decide whether the prosecutor's statements rose to the level of prosecutorial misconduct, because, read in the context of all the evidence, the prosecution's final ar-

gument sought to have the jury decide the case on bases completely unrelated to any of the real issues. At the least, the prosecution's final argument injected irrelevant and prejudicial considerations. The jury's attention was diverted from the facts supporting the charge and a verdict based on Messer's past record and influenced by the jury's perception of the community interest was made more likely. Thus, the remarks were highly improper, and, if they had been objected to, the trial court should have sustained the objection and instructed the jury to disregard them. Defense counsel's failure to lodge a timely objection was unreasonable and deficient. Having demonstrated two instances of deficient performance, Messer has satisfied the first prong of *Strickland, supra.*

Defense counsel's deficient performance in the two instances discussed above greatly prejudiced Messer's defense. In making this determination it is necessary to look at the totality of the evidence to ascertain whether, but for counsel's errors, there is a reasonable probability that the outcome would have been different. *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291. A reasonable probability is one sufficient to undermine confidence in the outcome. *Layton v. State* (1986), Ind., 499 N.E.2d 202. Moreover, logic dictates that, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland v. Washington* (1984), 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699.

The evidence presented at Messer's trial was far from overwhelming. The only direct evidence presented was that Messer was present at a scene where an apparent burglary had occurred. Mere presence at the scene of a burglary is insufficient to sustain a conviction. *Burkes v. State* (1983), Ind., 445 N.E.2d 983. Deputy Benner testified that he saw a shoe print inside the door. He agreed that the print "substantially" matched Messer's shoe, although he testified also that this conclusion was based on quick visual observation. The other factual evidence presented, that a doorknob was broken off, and that tools had been moved, established that a burglary occurred, but did not prove Messer's participation. The State's case was, therefore, primarily circumstantial and dependent on the jury's estimation of Benner's and Messer's credibility. Messer's credibility was undermined by the evidence of plea bargaining and was unfairly and improperly attacked by the prosecution's final argument.

While this opinion should not be read to say that there was necessarily insufficient evidence to sustain a conviction, the evidence was, again, far from overwhelming. Messer's trial counsel's failure to prevent admission of the damaging evidence of plea bargaining, and trial counsel's failure to object to the prosecution's final argument prejudiced Messer's defense to the extent that confidence in the outcome reached by the jury is undermined. By demonstrating both deficient performance and resultant prejudice, Messer has proved that he was denied effective assistance of counsel. Therefore this cause is reversed.

Reversed.

GARRARD, P.J., and ROBERTSON, J., concur.