

IN THE

# Court of Appeals of Indiana

Kelly L. Gillespie,

*Appellant-Petitioner*

v.

State of Indiana,

*Appellee-Respondent*



FILED

Sep 20 2024, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

September 20, 2024

Court of Appeals Case No.
23A-PC-2494

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause No.
59C01-2005-PC-268

**Opinion by Judge Kenworthy**
Judges May and Vaidik concur.

**Kenworthy, Judge.**

## Case Summary

In 2018, Kelly Gillespie was convicted after a jury trial of Level 4 felony possession of methamphetamine, Level 6 felony maintaining a common nuisance, and Class B misdemeanor possession of marijuana. In 2020, Gillespie petitioned for post-conviction relief. His petition was denied after an evidentiary hearing. Gillespie appeals, raising one issue: did the post-conviction court clearly err when it found his counsel was not ineffective in representing him at trial? We reverse and remand.

## Facts and Procedural History

Gillespie had a home in Mitchell, Indiana, and was involved in a romantic relationship with Karen Cornwell. Gillespie answered the door at Cornwell's house in Orleans, Indiana, when Detective Paul Andry arrived to serve an arrest warrant on Cornwell. While detaining Cornwell, Detective Andry noticed the house smelled strongly of marijuana. Cornwell's red truck and Gillespie's white truck were parked in the driveway. When Detective Andry retrieved medication Cornwell needed from her truck before transporting her to jail, he found a glass pipe with white residue later determined to be methamphetamine. Cornwell then admitted there was marijuana, several pipes, and other drug paraphernalia in the house. Detective Andry arrested both Cornwell and Gillespie.

[3]     After obtaining a search warrant, officers searched Cornwell's house, her truck, and Gillespie's truck. Detective Andry described Cornwell's house as dark and "pretty much [in] disarray" with "stuff thrown everywhere around." *Trial Tr. Vol. 2* at 179.

> [Officers] found multiple methamphetamine pipes in plain view; a box that contained a marijuana grinder, a small plastic baggie, and another methamphetamine pipe; and Cornwell's brown purse with pills inside. There was a floral-print purse on the sofa that contained a small baggie of marijuana, other plastic baggies, a $20 bill with an "eight-ball" logo commonly used for drugs, and two bags filled with a substance later determined to be methamphetamine. Then, in the dining room, they found a "dealing kit" on the table that included a wooden cigar box with small baggies, a spoon, and digital scales. These baggies had [a] yellow spider pattern . . . and contained a white crystal-like powder that was later determined to be methamphetamine.

*Gillespie v. State*, No. 18A-CR-1542, at *2 (Ind. Ct. App. Feb. 20, 2019) (mem.) (record citations omitted). In the bedroom, police found marijuana, firearms, women's clothing, and "a very small amount of men's clothing"—some jackets and shoes. *Trial Tr. Vol. 2* at 186. Detective Andry testified Cornwell's husband had recently passed away so he could not "positively say" whose clothing it was. *Id.*

[4]     In Cornwell's truck, police found a pipe with marijuana residue, a digital scale with methamphetamine residue, baggies, a prescription for Gillespie, and a court document with Gillespie's name on it. In Gillespie's truck, they found a

loaded revolver, a metal plate with methamphetamine residue, a tube from an ink pen, and several small baggies with a yellow spider pattern.

[5] The State charged Gillespie with dealing in methamphetamine, possession of methamphetamine, maintaining a common nuisance, and possession of marijuana. Brock Dawson ("Counsel") represented Gillespie at his jury trial, the third jury trial Counsel had conducted. Gillespie's defense "was he did not live with . . . Cornwell, at her home, but was merely present when police served an outstanding arrest warrant on her, having no actual or constructive possession of drugs or drug paraphernalia found in her home, and he was not a drug dealer but a user" based on items found in his truck. *PCR Ex. Vol. 1* at 40; *see also Trial Tr. Vol. 3* at 35 (Counsel arguing during closing that Gillespie and Cornwell "had a relationship and he may have stayed the night there a few times," but there was no evidence he lived with Cornwell). Cornwell, also facing charges arising out of these events, did not testify at Gillespie's trial.

[6] Detective Andry was the State's primary witness. On direct examination, Detective Andry testified Gillespie was arrested because "[h]e's at a property with drugs on it." *Trial Tr. Vol. 2* at 155. Even though Gillespie "had actually stated that he didn't live at the residence several times [and] didn't understand why he was being arrested[,]" Detective Andry "had reason to believe that he was residing there" because Cornwell told him Gillespie "stayed with her sometimes and she stayed with him sometimes." *Id.* Counsel did not object to this testimony. Counsel then asked Detective Andry on cross-examination if he had any first-hand knowledge of Gillespie living in the house. Detective Andry

answered, "Well, he was there when we went there and [Cornwell] told me he lived there, as did other people[.]" *Id.* at 214. Detective Andry did not "know what the difference is" between staying at someone's house and living there. *Id.*

[7] Detective Andry also testified on cross-examination that Cornwell was "the main dealer here. . . . I would just allege that [Gillespie] is assisting her." *Id.* at 218. Counsel returned to this line of thought on re-cross:

> Q. You feel confident [Cornwell] is a meth dealer, right?
> A. Oh yeah, I'm confident they're both meth dealers, but [Cornwell] is the supplier. She's the one that goes and picks it up.
> Q. Okay. Now . . . has there been any kind of transactions witnessed?
> A. I have not witnessed them. They have been reported to me. That's how I started the investigation. . . . It was an investigation that started back in November with a case that I worked and an arrest that I made and then I interviewed three different individuals from those cases and the information I got from those individuals indicated that . . . both [Gillespie] and [Cornwell] were involved in dealing[.] . . . [Gillespie], with full knowledge actually vetted people . . . before he let them in the residence, . . . he sometimes weighed the drugs out and . . . he also talked with people that were there about the transactions[.]
> Q. Are those people . . . expected to be here today . . .?
> A. Well, no. The one girl died. We do have a video taped interview with her that I'm sure we could bring up and the other two people are wanted on warrants for drug trafficking.
> Q. Okay. Would you consider those people um, I can talk about their credibility I guess later.
> A. I'd be glad to. I mean I would consider the two that I interviewed that were originally not to [sic] very reliable except that they [gave] me independent information that I could verify. The young lady that is dead now, that died of a drug overdose

recently, she had been found to be credible in Court and actually has testified in Federal Court. Although that does not always say that she would be credible in every circumstance. Once again her information correlated with what I found at the residence that day and it also correlated with the other two individuals that gave me the information about [Gillespie] and [Cornwell] dealing.

*Id.* at 219–21.

[8] The State introduced several exhibits showing the items found in the search of the house and trucks during Detective Andry's direct testimony. Detective Andry described two of the exhibits as pictures of "a pretrial diversion document signed by . . . Gillespie . . . a couple of days before" the search. *Id.* at 163; *see Trial Index of Ex.* at 33, 35. The State also admitted the actual agreement into evidence. *See Trial Index of Ex.* at 129. The agreement included a caption and cause number but no information about the charges. It listed Gillespie's address as Mitchell, Indiana. Counsel did not object to admission of the testimony or exhibits.

[9] During its closing argument, the State argued Gillespie was responsible for what was found at Cornwell's house, using Cornwell's statement and the information Detective Andry received from the three unnamed people as support:

Cornwell told Detective Andry that [Gillespie] stayed with her at the house. That's what his girlfriend, a person that he has been in a relationship with for four years, that's what she told Detective Andry that day. They stayed there, they [stayed at] his

place, they stayed at both places. Other people told Detective Andry that [Gillespie] and Cornwell were involved in dealing drugs at Cornwell's residence. At least three people had told Detective Andry, that's one of the reasons that he was there . . ., because he had this information about the two of them being involved in dealing drugs there at that house[.]

*Trial Tr. Vol. 3* at 26. The State also referenced the pretrial diversion agreement signed by Gillespie and found in Cornwell's truck as something "that ties [Gillespie] to whatever is in the house." *Id.* at 28. And the State told the jury the trial court would be instructing it about accomplice liability and that Gillespie "was dealing methamphetamine [or] was aiding . . . Cornwell in dealing in methamphetamine, which is the same as him dealing in methamphetamine." *Id.* at 38.

[10] The trial court gave the jury the following instruction about accomplice liability:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the crime, for the offense, has not been convicted of the offense or has been acquitted of the offense.

*Id.* at 45. Gillespie did not object to the instruction or tender his own.

[11] The jury found Gillespie guilty of all four charges. At sentencing, the trial court vacated Gillespie's conviction of possession of methamphetamine as a lesser included offense of dealing in methamphetamine and sentenced Gillespie to an

aggregate sentence of fifteen years. Gillespie's convictions and sentence were affirmed on direct appeal.[1]

[12] Gillespie petitioned for post-conviction relief, alleging several instances of ineffective assistance by Counsel during his trial. Gillespie obtained an affidavit from Counsel that was attached to his petition and admitted as an exhibit at the post-conviction hearing. The affidavit stated:

> 8. . . . I did not adequately represent Mr. Gillespie's interests in the course of the jury trial, to wit:
>
> A. I did not object to the Court's Final Instruction No. 11 on accomplice liability which was incomplete. I tendered no accomplice liability instruction. I could have tendered the pattern accomplice liability instruction 2.16 that included the language of mere presence at the scene is insufficient to convict for aiding, inducing, or causing the crime, which would have bolstered Mr. Gillespie's defense;
>
> B. I did not object to the State's questioning of Detective Paul Andry when he testified about what Karen Cornwell told him as it was inadmissible hearsay, there being no exceptions, and I had no ability to cross examine or confront Ms. Cornwell about her statement as she was a co-defendant in this case;
>
> C. I failed to object when the State moved to admit a pre-trial diversion agreement between the State and Mr. Gillespie

---

[1] Counsel did not represent Gillespie on appeal.

that was from another Orange County criminal case . . . as a violation of [Evidence Rule] 404(b);

      D.  In my re-cross-examination of Detective Paul Andry, I opened the door to harmful, incriminating, inadmissible testimonial evidence that was hearsay, a violation of [Evidence Rule] 404(b), inappropriate vouching testimony, and I had no way to confront and cross-examine the sources of this information.  This information was harmful and undermined Mr. Gillespie's defense at trial.

9.  There were no strategic reasons for my failure to make objections, tender a pattern accomplice liability instruction, or in my examination of Detective Andry[.]

*Appellant's PCR App. Vol. 2* at 48–49; *PCR Ex. Vol. 1* at 40–41.

[13]    The same judge who presided over Gillespie's jury trial heard the post-conviction petition.  Among other things, Gillespie introduced as exhibits at the evidentiary hearing "Juror Question(s) for Witness" forms showing two jurors had questions at trial about the pre-trial diversion agreement.  The trial court did not ask the questions because Counsel objected to them on the basis of Evidence Rule 404(b), but Gillespie asserted the forms show the jury "actually had seen the Pretrial [Diversion Agreement] and (inaudible) raised questions in their minds."  *PCR Tr. Vol. 2* at 13.  The State called Counsel to testify at the evidentiary hearing.  Counsel said his position had not changed from the statement in his affidavit.  *See id.* at 46.

The post-conviction court denied Gillespie's petition for post-conviction relief, finding:

> [Gillespie] has failed to carry his burden that trial counsel's performance fell below an objective standard of reasonableness. [Gillespie] has failed to overcome the strong presumption that counsel rendered adequate assistance. [Gillespie] has also failed to show prejudice in that there has been no showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Appellant's PCR App. Vol. 2* at 99–100 (quotation and citation omitted).

As to Gillespie's specific claims, the post-conviction court determined Counsel was not ineffective for his alleged failures because: (1) the "jury was properly instructed on accomplice liability"; (2) "[a]t worst, the recently signed pre-trial diversion agreement is benign; at best . . ., the pre-trial diversion supports his defense that he did not live with [Cornwell] because the agreement has a different address on it"; (3) Detective Andry's testimony about Cornwell's statement "arguably fits" under an exception to the hearsay rule, Cornwell's statement that Gillespie "stayed" with her but also had his own place "supported [Gillespie's] trial defense that he did not live at the residence," and "there was ample other evidence to show [Gillespie's] connection to the residence"; (4) Counsel's "lack of control of [Detective] Andry's responses on re-cross were prejudicial to [Gillespie], but [he] also elicited testimony from [Detective] Andry . . . that supported [Gillespie's] defense that [Cornwell] was the person dealing in methamphetamine and not him"; and (5) because "[n]one

of the grounds alleging ineffective assistance of counsel are individually sufficient to support [Gillespie's] claim of ineffective assistance of counsel[;] the assertion that the cumulative errors support the . . . claim must also fail." *Id.* at 97–99.

## Post-Conviction Standard of Review

[16] In the court below, Gillespie had the burden of establishing his claims for relief by a preponderance of the evidence. *See* Ind. Post-Conviction Rule 1(5). Gillespie therefore appeals from a negative judgment and must establish on appeal the evidence, as a whole, leads unmistakably and unerringly to a conclusion contrary to that reached by the post-conviction court. *Wilson v. State*, 157 N.E.3d 1163, 1170 (Ind. 2020). We will affirm the post-conviction court's denial of relief when the defendant fails to meet this "rigorous standard of review." *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019) (quoting *DeWitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001)), *cert. denied.*

[17] Post-Conviction Rule 1(6) requires the post-conviction court to make findings of fact and conclusions of law on all issues presented.[2] We do not defer to the

---

[2] When the post-conviction judge is the same judge who conducted the original trial, a post-conviction court's findings and judgment are entitled to greater than usual deference, *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *trans. denied,* because the judge "was in an exceptional position to assess not only the weight and credibility of the factual evidence, but also . . . whether it deprived the defendant of a fair trial," *State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003). However, the post-conviction court here also adopted the State's proposed order verbatim. *See Appellant's PCR App. Vol. 2* at 57–63. Although this practice is not prohibited, *Stevens v. State*, 770 N.E.2d 739, 762 (Ind. 2002), *cert. denied*, it is also not encouraged, *Pruitt v. State*, 903 N.E.2d 899, 940 (Ind. 2009). The post-conviction court's adoption of the State's proposed findings does not alter our clearly erroneous standard of review, *Wrinkles v. State*, 749 N.E.2d 1179, 1188 (Ind. 2001), *cert. denied*, but it also does not warrant greater deference.

post-conviction court's legal conclusions and will reverse the findings and judgment "only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019) (quoting *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017)). The post-conviction court is the "sole judge of the evidence and the credibility of witnesses." *Bradbury v. State*, 180 N.E.3d 249, 252 (Ind. 2022) (quoting *Hall v. State*, 849 N.E.2d 466, 468–69 (Ind. 2006)), *cert. denied*.

## Ineffective Assistance of Counsel

[18] When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Humphrey*, 73 N.E.3d at 682. First, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)). Second, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (quoting *McCary*, 761 N.E.2d at 392). The failure to establish either part will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

## The post-conviction court clearly erred in denying Gillespie relief.

In its findings and conclusions, the post-conviction court determined Counsel did not render deficient performance on any of Gillespie's claims of error. In general, we "strongly presume that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions." *Humphrey*, 73 N.E.3d at 684 (quoting *McCary*, 761 N.E.2d at 392). "[T]actical or strategic decisions will not support a claim of ineffective assistance," and we afford great deference to trial counsel's discretion to choose strategy and tactics. *Id.* at 683 (quoting *McCary*, 761 N.E.2d at 392). The State relies heavily on the oft-repeated statement that isolated errors, poor strategy, or bad tactics do not necessarily amount to deficient performance in defending the post-conviction court's assessment of Counsel's performance. *See Appellee's Br.* at 20, 22, 25. But where the record contradicts the presumption that counsel's performance was the result of strategic and tactical planning, we will not afford such deference to counsel's decision-making. *Humphrey*, 73 N.E.3d at 684. Here, Counsel submitted an affidavit stating "[t]here were no strategic reasons" for his disputed actions or omissions. *Appellant's PCR App. Vol. 2* at 49. Accordingly, we will not give deference to Counsel's decisions.

## 1. Counsel's representation fell below an objective standard of reasonableness.

### A. Detective Andry's Testimony

[20] Gillespie claims Counsel's performance was deficient for failing to object several times during Detective Andry's testimony. Counsel supported Gillespie's claim, acknowledging he did not object and had no strategic or tactical reason for not doing so. Despite Counsel's concession, the post-conviction court disagreed and concluded Counsel did not perform deficiently during Detective Andry's testimony.

[21] To establish deficient performance for failing to object, the defendant must show a reasonable probability the objection would have been sustained if made. *Garrett v. State*, 992 N.E.2d 710, 723 (Ind. 2013).

[22] Gillespie first claims Counsel's performance was deficient for failing to object when Detective Andry relayed Cornwell's hearsay statement. Detective Andry testified Gillespie protested being arrested, stating several times "he didn't live at the residence[.]" *Trial Tr. Vol. 2* at 155. When Detective Andry asked Cornwell about this, she told him "[Gillespie] stayed with her sometimes and she stayed with him sometimes." *Id.*

[23] Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. Ind. Evid. Rule 801(c). Generally, hearsay is inadmissible unless it falls into one of the well-delineated exceptions. Evid. R. 802. Cornwell's out-of-court statement—that Gillespie stayed at her house

sometimes—was offered to prove the truth of the matter asserted—that Gillespie was connected to Cornwell's house and constructively possessed the drugs and paraphernalia found there. Although the defense strategy was to show Gillespie was merely present at Cornwell's house when the warrant was served, Counsel did not object to this testimony. Not only did Counsel fail to object, but he returned to this point during cross-examination, giving Detective Andry the opportunity to elaborate.

[24] The post-conviction court found the statement was "arguably" not hearsay because it was a statement by a co-conspirator, or fit either the present sense impression or excited utterance exception to the hearsay rule. *Appellant's PCR App. Vol. 2* at 110 (citing Evid. R. 801(d)(2)(E) and 803(1), (2)). In other words, the post-conviction court found Gillespie failed to show an objection to this testimony would have been sustained. We conclude none of those sections apply.[3]

---

[3] The State additionally argues on appeal this statement was admissible as "course-of-investigation" testimony, offered "only to explain why the investigation proceeded as it did[.]" *Appellee's Br.* at 19. "[C]areful attention" must be paid where the course-of-investigation exclusion is invoked because "[t]here is a risk the jury will rely upon the out-of-court assertion as substantive evidence of guilt—rather than for the limited purpose of explaining police investigation—and the defendant will have no chance to challenge that evidence through cross-examination." *Blount v. State*, 22 N.E.3d 559, 566 (Ind. 2014). "The ultimate inquiry is: Was the out-of-court statement used primarily to show the truth of its content, constituting inadmissible hearsay, or merely to explain subsequent police action, excluded from hearsay?" *Id.* Here, Cornwell's out-of-court statement was used primarily to show Gillespie had a possessory interest in her house, and by extension, the contents thereof.

[25] A statement is not hearsay if the statement is one "by the party's coconspirator during and in furtherance of the conspiracy." Evid. R. 801(d)(2)(E). The State must provide "independent evidence" of the conspiracy before the statements will be admissible as non-hearsay under Rule 801(d)(2)(E). *Lander v. State*, 762 N.E.2d 1208, 1213 (Ind. 2002). Here, there is no evidence of a conspiracy between Gillespie and Cornwell, and even if there were, Cornwell's statement about where Gillespie lived would not be in furtherance of it.

[26] Evidence Rule 803(1) describes a present sense impression as, "A statement describing or explaining an event, condition or transaction, made while or immediately after the declarant perceived it." This exception is based on an "assumption that the lack of time for deliberation provides reliability." *Hurt v. State*, 151 N.E.3d 809, 814 (Ind. Ct. App. 2020) (quotation omitted). And Rule 803(2) describes an excited utterance as, "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." "The heart of the inquiry is whether the declarant was incapable of thoughtful reflection." *Hurt*, 151 N.E.3d at 813–14 (quotation omitted). Cornwell's statement fits neither of these exceptions, as it was not a statement describing an event while or immediately after Cornwell perceived it or a statement relating to a startling event.

[27] If Counsel had made a proper objection to Detective Andry's testimony relating Cornwell's hearsay statement to the jury, there is a reasonable probability the trial court would have sustained it. By failing to make a proper objection, Counsel's conduct fell below an objective standard of reasonableness.

[28] Gillespie next contends Counsel's performance was deficient when he allowed Detective Andry to offer inadmissible testimony on re-cross examination. Detective Andry relayed statements from three unnamed people about Gillespie's involvement in dealing drugs at Cornwell's house, explained why they were reliable, and said he was "confident [Gillespie and Cornwell are] both meth dealers." *Trial Tr. Vol. 2* at 219. Counsel did not interrupt Detective Andry's gratuitous answers, object, or move to strike these statements. The post-conviction court concluded "Counsel's lack of control" during Detective Andry's testimony was arguably prejudicial to Gillespie, but Counsel "was effective in establishing through Andry that [Cornwell] was the 'main dealer,'" not Gillespie, and in eliciting testimony that Detective Andry had not personally witnessed any drug transactions or arranged any controlled buys with Cornwell or Gillespie. *Appellant's PCR App. Vol. 2* at 99.

[29] Detective Andry's testimony about drug transactions reported to him by three people who told him "both [Cornwell] and [Gillespie] were involved in dealing" was hearsay. The out of court statements were offered to prove Gillespie was dealing methamphetamine. *See* Evid. R. 801. Evidence Rule 704(b) prohibits a witness from testifying to an opinion about "whether a witness has testified truthfully" because "it is essential that the trier of fact determine the credibility of the witnesses and the weight of the evidence." *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012). Here, Detective Andry's testimony went a step beyond, as he vouched for the reliability of incriminating information provided by unnamed sources who did

not testify at trial and were not subject to cross-examination. And Detective Andry's testimony he was confident Gillespie was a drug dealer was also inadmissible under Evidence Rule 704(b), which explicitly prohibits a witness from giving an opinion on the ultimate issue of guilt in criminal cases. *See Williams v. State*, 43 N.E.3d 578, 580 (Ind. 2015) (testimony of detective who observed a controlled buy that "there's zero doubt in my mind that that was a transaction for cocaine" was an "outright opinion of guilt" and thus inadmissible).

[30] Counsel's questions on re-cross and his failure to interject and move to strike Detective Andry's answers when they veered into inadmissible territory led to the jury hearing hearsay statements from three unnamed people directly implicating Gillespie in dealing methamphetamine, testimony vouching for the credibility of those people, and opinion testimony about Gillespie's guilt from a police officer.

[31] If Counsel had moved to strike and admonish the jury to disregard Detective Andry's testimony, the trial court should have done so. Failure to prevent admission of inadmissible, prejudicial evidence demonstrates deficient performance. *Tucker v. State*, 646 N.E.2d 972, 977 (Ind. Ct. App. 1995). Counsel's performance in conducting re-cross examination of Detective Andry fell below an objective standard of reasonableness.

### *B. Accomplice Liability Jury Instruction*

[32]   Gillespie also claims Counsel's performance was deficient for failing to object to the trial court's cursory accomplice liability instruction and tender a more complete instruction. Again, Counsel supported Gillespie's claim, and again, the post-conviction court disagreed and concluded Counsel did not perform deficiently because the "jury was properly instructed on accomplice liability." *Appellant's PCR App. Vol. 2* at 97.[4]

[33]   "In order to establish that counsel's failure to object to a jury instruction was ineffective assistance of counsel, a defendant must first prove that a proper objection would have been sustained." *Lambert v. State,* 743 N.E.2d 719, 741 (Ind. 2001) (quoting *Potter v. State*, 684 N.E.2d 1127, 1132 (Ind. 1997)), *cert. denied*.

[34]   A defendant's mere presence at the scene of a crime, or mere acquiescence in the commission of a crime, is not enough to support a conviction as an accomplice. *Bethel v. State*, 110 N.E.3d 444, 450 (Ind. Ct. App. 2018), *trans. denied*. The propriety of giving a "mere presence" instruction on accomplice liability is well-settled. *See, e.g.*, *Wright v. State,* 690 N.E.2d 1098, 1109–10 (Ind.

---

[4] The post-conviction court also found the State "did not rely on the theory of accomplice liability" because Gillespie "was not charged under the accomplice liability statute." *Id.* However, the statute governing accomplice liability "does not establish it as a separate crime, but merely as a separate basis for the crime charged." *Hampton v. State*, 719 N.E.2d 803, 807 (Ind. 1999). And the State did reference accomplice liability in its closing argument, arguing Gillespie "was aiding . . . Cornwell in dealing in methamphetamine, which is the same as him dealing in methamphetamine" and reading to the jury the trial court's final instruction on that issue. *Trial Tr. Vol. 3* at 38.

1997) (noting the Court's previous approval of instructions informing jury that "mere presence" and "negative acquiescence" were not enough to prove accomplice liability); *Fry v. State*, 25 N.E.3d 237, 250 (Ind. Ct. App. 2015) ("As a general rule, juries are instructed that a defendant's mere presence is insufficient to establish guilt in cases involving accomplice liability"), *trans. denied*.

[35]   The instruction given to the jury here was simply the statutory definition of accomplice liability. *See Trial Tr. Vol. 3* at 45; *see also* Ind. Code § 35-41-2-4 (1977). Gillespie provided as an exhibit at the post-conviction hearing the Indiana pattern jury instruction on accomplice liability that includes the statutory definition and also the following language:

> Before you may convict the Defendant of this crime, you must find there is evidence of the Defendant's affirmative conduct, either in the form of acts or words, from which an inference of a common design or purpose may be reasonably drawn. The Defendant's conduct must have been voluntary and in concert with the other person.
>
> The Defendant's mere presence at the scene of the crime, or mere acquiescence in the commission of the crime, is insufficient to convict for aiding, inducing, or causing the crime charged[.]

*PCR Ex. Vol. 1* at 91 (Indiana Pattern Criminal Jury Instruction 2.1600). Despite Gillespie's defense being that he was merely present at Cornwell's house when police arrived, Counsel did not object to the trial court's instruction or tender this pattern instruction.

[36] In *Peterson v. State*, the trial court refused the defendant's tendered accomplice liability instruction that included the "mere presence" language and gave an instruction that tracked the statutory language. 699 N.E.2d 701, 705–06 (Ind. Ct. App. 1998). A panel of this Court held the trial court committed reversible error because the tendered instruction was a correct statement of the law, was supported by the evidence, and was not adequately covered by the given instruction. *Id.* at 707. Although *Peterson* was not a post-conviction case, it shows that had Counsel objected and tendered the pattern instruction in furtherance of Gillespie's defense that he did not participate in dealing methamphetamine, the trial court should have given the fuller instruction. Contrary to the post-conviction court's conclusion, Counsel's failure to object to the trial court's instruction and tender an alternate one constituted deficient performance.

### C. Pre-Trial Diversion Agreement

[37] Gillespie also claims Counsel's performance was deficient in not objecting to the admission of the pretrial diversion agreement on Evidence Rule 404(b) grounds. *See Appellant's Br.* at 27–31. This rule deems evidence of a crime, wrong, or other act "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Ind. Evid. Rule 404(b)(1); *see also Fairbanks v. State*, 119 N.E.3d 564, 568 (Ind. 2019) (noting Rule 404(b) "prevents the jury from indulging in the forbidden inference that a criminal defendant's prior wrongful conduct suggests present guilt") (internal quotation omitted), *cert. denied.* A pre-trial

diversion agreement captioned "State of Indiana v. Kelly Gillespie" and stating, "The State of Indiana agrees to defer the prosecution of the charge(s) against the Defendant," is evidence of a crime, wrong, or other act, and an objection would have been appropriate. *Trial Index of Ex.* at 33. But the State pointed to the agreement being found in Cornwell's truck as evidence the two lived together. Because Rule 404(b) evidence may be admissible for another purpose, Evid. R. 404(b)(2), it is not clear the trial court would have sustained an objection if made. Moreover, the post-conviction court's finding the agreement was at worst benign and at best supported Gillespie's defense is not clearly erroneous.

### D. Summary

[38] We conclude Gillespie has satisfied the first prong of the two-part test articulated in *Strickland*—Gillespie has shown Counsel's representation "fell below an objective standard of reasonableness" when he failed to object to inadmissible evidence during Detective Andry's testimony and failed to object or tender an alternate accomplice liability jury instruction. 466 U.S. at 688. Next, we turn to the second prong of the *Strickland* test—that is, Gillespie must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

## 2. Gillespie was prejudiced by Counsel's errors.

[39] "Generally, trial errors that do not justify reversal when taken separately also do not justify reversal when taken together." *Weisheit v. State*, 109 N.E.3d 978,

992 (Ind. 2018), *cert. denied*. That said, in an ineffective assistance of counsel context, we assess "the cumulative prejudice accruing to the accused" to determine whether the "compilation of counsel's errors has rendered the result unreliable, necessitating reversal under *Strickland's* second prong." *Smith v. State*, 547 N.E.2d 817, 819–20 (Ind. 1989).

[40]  The post-conviction court concluded none of Gillespie's claims of ineffective assistance were individually sufficient to support relief and "[a]s such, the assertion that the cumulative errors support the ineffective assistance of counsel claim must also fail." *Appellant's PCR App. Vol. 2* at 99. Having found the post-conviction court's legal conclusions as to deficient performance were clearly erroneous, however, we consider whether there is a reasonable probability that but for Counsel's errors, the result of Gillespie's trial would have been different.

[41]  Counsel's deficient performance in the instances discussed above greatly prejudiced Gillespie's defense. "A defendant's objection on grounds of hearsay is critical. This is so because '[o]therwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial.'" *Humphrey*, 73 N.E.3d at 684 (quoting *Banks v. State*, 567 N.E.2d 1126, 1129 (Ind. 1991)). That is precisely what occurred here. Hearsay evidence was the only evidence presented at trial showing Gillespie was more than a visitor at Cornwell's house. The State relied on this evidence in its closing argument to the jury. Failing to object to this evidence allowed it to be used to establish Gillespie's interest in the house and involvement in activities there.

[42] Disregarding that evidence, the evidence presented at Gillespie's trial was far from overwhelming. Gillespie's truck was parked at Cornwell's house, and he answered the door when police knocked. Items linked to Gillespie were found in Cornwell's truck, but none of his personal items were found in the house. None of the inadmissible evidence was cumulative of other, properly admitted evidence. *See Cooley v. State*, 682 N.E.2d 1277, 1282 (Ind. 1997) (where hearsay evidence is merely cumulative of other evidence properly admitted, the probable impact of the evidence on the jury is "sufficiently minor so as not to affect the substantial rights of the parties") (quotation omitted). The prejudice from the inadmissible statements was compounded by the trial court's cursory accomplice liability instruction, which focused on the law stating a person could be convicted as an accomplice regardless of whether the other person had been prosecuted or convicted and failed to focus on Gillespie's knowledge and conduct.

[43] Counsel's errors, which permitted the jury to consider the only evidence directly connecting Gillespie to Cornwell's residence, are sufficient to undermine our confidence in the verdict rendered in this case. Viewing the evidence *without* the inadmissible statements and *with* a full accomplice liability instruction, there is a reasonable probability the result of Gillespie's trial would have been different.

## Conclusion

Gillespie has shown the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. We reverse the post-conviction court's judgment and remand this case for a new trial.

Reversed and remanded.

May, J., and Vaidik, J., concur.

ATTORNEYS FOR APPELLANT

Amy E. Karozos
State Public Defender

Randy A. Elliot
Deputy State Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana